## HUDSON CANAL CO. *v.* PENNSYLVANIA COAL CO.

In the case of a contract drawn technically, in form, and with obvious attention to details, a covenant cannot be implied in the absence of language tending to a conclusion that the covenant sought to be set up was intended. The fact that the non-implication of it makes the contract, in consequence of events happening subsequently to its being made, quite unilateral in its advantages, is not a sufficient ground to imply a covenant which would tend to balance advantages thus preponderating.

ERROR to the Circuit Court for the Southern District of New York.    The case was this:

The Pennsylvania Coal Company, being engaged in mining coals from land in the northeast corner of Pennsylvania, for which they wished to get means of easy transportation to New York, and the Hudson Canal Company having a canal whose capacity was not fully employed, and which would afford the transportation desired, provided a railroad could be made from the Coal Company's lands to the western end, comparatively near them, of the canal, the two companies entered, under their corporate seals, into long and technically drawn articles of agreement, with recitals in the beginning, and each party's covenants contained in separate parts of the instrument subsequently.

1. The recitals recited that an existing road, which brought coal to the canal, was not sufficient to employ the full capacity of the canal.

2. That if the canal should be enlarged, as it might be, its unemployed capacity would be still greater.

3. That it was for the interest of the canal company, that in either event its surplus capacity should not remain unemployed, but that it should be allowed to be used at a reasonable rate of toll by any other company which might

hold lands for the purpose of mining coal, and should connect such lands by railroad or otherwise, with the said canal *for the purpose of transporting coal thereon.*

The canal company then covenanted and agreed with the coal company to furnish, *at all times thereafter*, to the boats of said coal company, all the facilities of navigation afforded by the canal to boats used by others, or by the canal company itself, charging only a certain toll per ton [a reduced toll], to be regulated each year by the market value of coal; provided, however, that the plaintiffs should not be bound to allow the quantity transported in pursuance of the agreement to exceed, in any one season, 400,000 tons, unless the canal should be enlarged, and in that case, one-half its capacity of transportation.

The coal company, "in consideration of the premises, and of acts done and investments made, *with a view to the transportation of coal* on the canal of the said canal company, as well as of the mutual undertakings herein contained, and of one dollar paid by the managers of the said coal company," promised and agreed with the canal company to use all its influence to cause the speedy construction of a railroad from its coal land to the canal, at or near the mouth of the Wallenpaupack River, and that if the construction of such road should not be commenced within one year, and finished within three, the plaintiffs might declare the agreement null and void.

The coal company built and put in operation the railroad, the canal company enlarged their canal so as to be sufficient for the transportation of all the coals which the coal company could mine, and the coal company put on the canal its boats, which were allowed to pass at the reduced toll agreed on.   But the price of coals rising greatly during the war, and after it, and the tolls on the canal (adjusted as, under the articles of agreement, they were, on a sliding scale) becoming very high, the coal company induced the New York and Erie Railroad Company, whose road led to New York, to make a branch road, connecting it with the railway of the coal company at the point where this latter connected

with the canal, and on this railway the coal company now carried a large quantity of its coal.

Hereupon the canal company sued the coal company in covenant for damages, declaring on the articles and facts as above set forth, and averring, moreover, that when the contract was made there were no means, either existing or contemplated, by which the coal company's coal, after being brought to the canal, could be sent to market except on the canal. And the question was whether, by those articles of agreement, the coal company was bound to carry on the canal, all its coal brought to it by the connecting railroad ; in other words, and more technical form, whether the declaration was sufficient and any cause of action shown.

It was conceded by the canal company that there was no express covenant by the coal company to transport even a pound of coal by the canal. The suit was founded, therefore, on the assumption that, according to the true construction of the agreement, there was imposed upon the coal company, in consideration of the obligations of the canal company, a correlative obligation on the coal company to send its coal by the canal alone, and that the obligation of the coal company in this respect was so plainly to be perceived in the contract that the court would enforce it as an implied covenant, and as fully as though it were expressed in words.

The court below was of the opinion there was no covenant, express or implied, on the part of the coal company, that it would transport on the canal all the coal brought over their railroad connecting with the canal, and judgment being given accordingly for the coal company, a writ of error was taken hence.

*Mr. Nash, for the plaintiff in error :*

The rule is settled that though a contract may in terms bind but one party, yet the law will imply corresponding and correlative obligations when that is necessary to carry out the intention of the parties and prevent the contract from being ineffectual. Thus, " if a man engages to work

and render services which necessitate great outlay of money, time, and trouble, and he is only to be paid by the measure of the work he has performed, the contract necessarily presupposes and implies on the part of the person who engages him an obligation to supply the work; so when there is an engagement to manufacture some article, a corresponding obligation on the other party is implied to take it, for otherwise it would be impossible the party bestowing his services could claim any remuneration."*

Now, upon the recitals of the contract, after incorporating all the matters referred to in them, the parties may be considered as making a dialogue in this wise:

*Canal Company.*—We have more canal capacity than we can use, and are likely to have more than we have now; if you will use it we will take your coal at a reduced rate, the rate to be a sliding scale, according to the market price of coal each year, but this shall not apply to more than half the capacity of the canal.

*Coal Company.*—But we can't avail ourselves of your offer without building a road to connect our coal lands with your canal.

*Canal Company.*—To induce you to build the road we'll agree that the rate which we shall fix upon shall be made permanent.

It is apparent, then, that the mutual stipulations were on the one part, to use the canal; on the other to allow it to be so used at a reduced rate. The inducement to build the road was the undertaking of the company never to repudiate the arrangement.

The consideration clause recites "the *mutual* undertakings herein contained." The undertakings of the canal company were plain enough, but unless the coal company was bound to carry on the canal the coal brought to it on the railroad, there was no *mutual* undertakings in the matter. The contract of the canal company would be void as wanting a

---

* Per Cockburn, C. J., in Churchward *v.* The Queen, Law Reports, 1 Q. B. 173, 198; and see Barton *v.* McLean, 5 Hill, 256.

consideration.    The contract, therefore, requires balancing; and when balanced, the considerations arrange themselves thus: reduced rate of tolls, as against the agreement to transport a large amount of coal.    Permanent reduction as an inducement to enter into the arrangement and to build the road, without which, as a prerequisite, the contract could not go into effect at all.

In interpreting contracts which seem not fully to express the obligations on both sides, the question is what each party supposed the other party understood by the contract. In other words, the interpretation is to be according to the equity and fair meaning of the whole arrangement, if this does not conflict with the positive provisions of the agreement.*

Now here there were, when this contract was made, no means existing or thought of by which the coal after being brought to the canal could be sent to market except on this canal.    In addition the canal was primarily for the transportation of coal.    It ran into the coal region and was connected with the coal mines by railroads.    There was little miscellaneous freight.    The building of the railroad therefore tended to the benefit of the canal, not by bringing a general traffic to it, but simply by making a new connection with the coal fields.    The mere building of the railroad, there-fore, except as it might *secure* the use of the canal by the coal that came over the road, was no inducement to the canal company to subject themselves to the onerous obligations imposed by the contract.

The contract substantially requires of the canal company to reserve for use of the coal company one-half of the capacity of the canal, and this obligation prevents the canal company from multiplying their own connections with the coal fields or inviting others to invest in such enterprises, because the coal company may at any time, though they substantially cease to use the canal, resume its use and claim all their contract rights.

* Potter *v.* Ont. & Liv. Ins. Co., 5 Hill, 147.

If the coal company has found a route to market more profitable than our canal, let them notify to us that they shall abandon the contract, and claim no further benefits under it. Then the contract falls. The ground of their refusal to send the coal on our canal is, that at the market price of coal, the toll becomes a high one. But with the increased rate of wages which makes the market price of coal high, the expense of keeping up the canal is in like manner increased. Still the defendants insist on holding the plaintiffs bound. This is unjust. For we are tied up from making any engagements for the use of the canal, which may interfere with the shifting purposes of the coal company, and we are even required, in order to collect any toll at all, to go through every spring with the formality of ascertaining under the contract the rate of tolls on coal which the coal company will send by the canal, if the rate suits them, while if the rate does not suit them they will send it by the New York and Erie road.

*Messrs. Evarts and Southmayd, contra :*

The plaintiffs' claim rests wholly upon the notion that a covenant to the effect which he would have is raised by *implication of law.*

Strictly speaking, there are no implied covenants in law save those which arise according to fixed legal rules, by the use in instruments of a certain character, of certain words, which when thus used, have a *fixed technical signification,* beyond their natural or ordinary meaning; or which by fixed rules import a particular obligation, or have a specific legal result—as where the word "give" is used in a deed, or "grant," or "demise" in a lease—or those which by fixed legal rules result from particular acts or relations.[*]

But in construing an agreement, the court will have regard to the real intent and meaning of the parties as ascertained from the entire instrument, and by reference to the circumstances attending the making of it, and wherever the

---

[*] Comyn's Digest, Title "Covenant," A. 4.

language of the writing leaves in doubt its meaning upon the particular point, it shall be so construed, *in so far as the language will possibly permit,* as to effectuate the real intent and meaning thus ascertained. In the application of this principle of construction, it is held, that where the language of an instrument expresses imperfectly or obscurely an obligation, which it plainly appears to the court, the party intended thereby to assume, his obscure or imperfect language shall be construed to impose upon him the obligation which he intended it should impose upon him; and in some cases, this principle of supplying defects or imperfections in the language used in an instrument for the purpose of *expressing* or *defining* an obligation intended to be assumed by it, has doubtless been pushed pretty far—sometimes, perhaps, unwarrantably so.

Where a party has been held bound to an undertaking or obligation under a sealed instrument which was thus obscurely or imperfectly expressed upon its face, the case is sometimes spoken of as one of implied covenant; but it is submitted that the expression applied to such a case is an inaccurate one. We take note of its inaccuracy, because its use tends to an idea which misleads as to the extent to which the practice of supplying defects in language may be legitimately carried.

The cases in which parties have been held subject to the obligation of a covenant, not in terms expressed in the instrument (excepting the cases of technical words which import a covenant in law), all rest upon this principle of construing the language to effectuate the intent with which it appears to have been used. If any case be found going beyond the due application of this principle, we submit that it is not good law.*

---

* Perdage *v.* Cole, 1 Saunders, 319, i; Duke of St. Albans *v.* Ellis, 16 East, 352; Randall *v.* Lynch, 12 Id. 179; Earl of Shrewsbury *v.* Gould, 2 Barnewall & Alderson, 489; Rhodes *v.* Bullard, 7 East, 116; Gerrard *v.* Clifton, 7 Term, 676; Clifton *v.* Walmesley, 5 Id. 564; Seddon *v.* Senate, 13 East, 63, per Lord Ellenborough, 74; Lyell *v.* Newark Lime and Cement Manufacturing Co., New York Court of Appeals Cases, March Term, 1862.

If the question raised by the plaintiffs upon this agreement, is to be determined by reference to this standard, the plaintiffs must inevitably fail.

This instrument contains no language having any reference whatever to any such stipulation on the defendants' part, as is now claimed to exist. There is no language which either party, however careless or illiterate, could have supposed to bear any such meaning, or which could have been used with any *idea* of expressing or defining any such obligation on the defendants' part. And surely a court has no warrant for charging the defendants with such a covenant as is here alleged, not because they have ever made it or ever intended to make it, but upon the ground of its being a covenant which it would have been reasonable for them to make.

Most, if not all, of the cases—it is to be observed—in which courts have so construed the language of an instrument as to amount to a covenant not distinctly expressed upon its face, have arisen upon agreements, brief in their terms, and loosely and inartificially drawn, and in the preparation of which it was manifest that no considerable time or care had been bestowed.

The instrument now under consideration is drawn with most elaborate care. The stipulations on each side, with the considerations moving the parties to enter into them, are technically expressed in very full detail, each party's covenants are contained in a separate portion of the indenture; and the design is plainly apparent that whatever was intended to be agreed to at all, should be expressed at large in unmistakable language, and not left to inference.

Yet, as we have already said, the instrument contains not one word which can be supposed to have been inserted for the purpose or with the idea of expressing any undertaking on the defendants' part, of the nature of that with which they are now sought to be charged.

If, upon an instrument thus planned and drawn, the court should hold the defendants chargeable with such an undertaking as the plaintiffs claim, it would not be *construction* of

the instrument actually executed, but the mere interpolation, by the will of the court, of a covenant which was not at all in the minds of the parties.

[The learned counsel then analyzed the articles of agreement to show that thus examined they showed that such an agreement as it was sought to imply, was not intended to be made, and that they sustained the view above taken on general principles.]

Mr. Justice CLIFFORD delivered the opinion of the court.

Covenant broken is the foundation of the claim of the plaintiffs, as set forth in the declaration. Reduced to a concise statement, the alleged cause of action is that the defendants covenanted and agreed with the plaintiffs, in the articles of agreement mentioned in the declaration, that all the coal mined by them on their coal lands and transported over their railroad to the place where the railroad connects with the canal of the plaintiffs, should be transported from that place to tide waters upon the plaintiffs' canal, and that they would pay to the plaintiffs the toll prescribed in the agreements for the use of their canal in such transportation; and the alleged breach is that the defendants have not kept those covenants and agreements.

Service of the writ having been made, the defendants appeared and pleaded twelve special pleas in addition to the plea of *non est factum.* Issues were tendered by the defendants in the first, third, fourth, fifth, and sixth pleas, which were duly joined, and the plaintiffs having demurred to the second, seventh, eighth, ninth, tenth, eleventh, twelfth, and thirteenth pleas, the defendants joined in the several demurrers.

Particular description of the objections taken by the plaintiffs to the several special pleas demurred to is unnecessary, as the defendants concede that they are bad if the declaration sets forth a good cause of action, but they insist that the declaration is also bad and insufficient, and that they, the defendants, are entitled to judgment because the first fault in pleading was committed by the plaintiffs in the

declaration.  Judgment in the Circuit Court was for the defendants, and the plaintiffs sued out a writ of error and removed the cause into this court.

Articles of agreement were concluded on the 31st day of August, 1847, between the plaintiffs and a certain unincorporated association, called the Wyoming Coal Association, and on the 29th of July, 1851, the parties to this suit entered into certain other articles of agreement, in which it is recited, among other things, that the corporation defendants, prior to that date, had, at the request of the coal association, made and constructed the railroad described in the first-mentioned agreement, and that all the business and interests of the coal association had been assigned and transferred, and become fully vested in the said defendants, and the parties therein covenanted and agreed with each other that the former agreement between the coal association and the plaintiffs shall stand, and be deemed and taken to be " the contract of the parties to these presents in the same manner " as if the defendant corporation had originally been the party of the second part to the same, instead of the coal association.

Both of these agreements are incorporated into the declaration, and in determining the rights of the parties in this case, they may both be regarded as they would be if both had been executed by the defendants as well as by the plaintiffs, as all the obligations contracted by the coal association have been assumed by the defendant corporation.  All covenants upon the merits of the controversy contained in the first agreement, as well as those contained in the last, must be considered as covenants between the parties to this suit; and viewed in that light the plaintiffs covenanted and agreed with the defendants in the first agreement to furnish, at all times thereafter, to the boats of the defendants navigating the canal of the plaintiffs, all the facilities afforded by the canal company to boats used by other parties or by the plaintiffs themselves, charging and collecting only a certain toll per ton gross weight, to be adjusted each year and regulated in a prescribed manner by the market value of coal, but subject, nevertheless, to the proviso that the plaintiffs

should not be bound to allow the quantity of coal to be transported in pursuance of the articles of agreement to exceed in any one season four hundred thousand tons, unless they should enlarge their canal; nor in that event, to exceed one-half of the whole capacity of the canal for transportation, exclusive of the tonnage employed in the transportation of other articles than coal. · Other covenants on the part of the plaintiffs are contained in the original agreement, but none of them are of a character to afford any aid in the solution of the questions involved in the pleadings.

Following the · covenants of the plaintiffs are certain unimportant covenants made by the defendants, but in conclusion the defendants also promise and agree, "in consideration of the mutual undertakings herein contained," that they will use all their influence to cause the speedy construction of a railroad from the coal lands which they own to the canal of the plaintiffs, to connect with the same at the point or place therein described; and they also agree that if the construction of such railroad shall not be commenced within one year and be completed within three years, the plaintiffs may declare the agreement null and void.

Based upon these two agreements the declaration alleges that the defendants constructed the railroad therein described and put the same in operation as therein required; that the canal of the plaintiffs at that date did not permit the transit of boats of a tonnage exceeding fifty tons; that relying upon the covenants and undertakings of the defendants they immediately entered upon the work of enlarging their canal, and that they continued to prosecute the work with diligence and at great expense until the same was completed; that the canal as so enlarged permits the transit of boats of the tonnage of one hundred and twenty-five tons, making the capacity of the canal for transportation, in each season of navigation, as enlarged, eighteen hundred thousand tons; that the defendants, claiming the benefits and privileges of the covenants and agreements, did, after the completion of their railroad, construct and procure a large number of boats to be used upon the said canal in the transportation of coal

brought over their railroad, and did thereafter for the period therein mentioned transport all the coal which they brought over their railroad upon the canal of the plaintiffs to its eastern terminus at tide-water, as contemplated by the agreements; that they, the plaintiffs, have at all times been ready and willing to furnish to the boats owned and used by the defendants for the purpose of such transportation, all the facilities of navigation the canal ever afforded to their own boats, or to the boats owned or used by any other person or company.

Such facilities were sufficient, as the plaintiffs allege, for the transportation of all the coal mined by the defendants and transported by them over their said railroad during the period laid in the declaration, but the plaintiffs allege that the defendants, not regarding their covenants and undertakings to transport all their coal, to the extent aforesaid, over the canal of the plaintiffs, and to pay to them the prescribed rate of toll for such transportation, did not nor would they perform that covenant and agreement, but induced another railroad company to construct a branch road and connect the same with their railroad at the place where the latter road connects with the canal of the plaintiffs, and that they thereafter, during the period alleged in the declaration, diverted a large quantity of their coal transported over their railroad from the plaintiffs' canal, and transported the same from the place of such connection to tide-waters over the railroad of such other company, to the damage of the plaintiffs, as they say, in the sum of nine hundred thousand dollars.

Defects of form in the declaration or in the several pleas filed by the defendants are waived, as it is well settled that defects of substance only are open to a party who has pleaded to the merits or to one who has replied to an antecedent pleading.*

Particular examination of the several special pleas to which demurrers were filed need not be made, as it is conceded that they were framed upon the theory that the decla-

---

* Aurora v. West, 7 Wallace, 93; Clearwater v. Meredith, 1 Wallace, 38.

ration is insufficient. Judgment, therefore, must be for the plaintiffs if it be held that the declaration alleges a good cause of action, but if not, then the judgment of the Circuit Court must be affirmed, because if that conclusion be adopted the first fault in pleading was committed by the plaintiffs.*

Obviously the decision of the question must depend upon the construction to be given to the first agreement therein set forth, as it is quite clear that the declaration is well drawn if that agreement, when properly construed, will support the allegations that the defendants covenanted and agreed that all the coal mined on their coal land, and transported over their railroad to the place where the railroad connects with the canal of the plaintiffs, should be sent forward from that place to tide-waters upon their canal, and that the defendants also covenanted and agreed that they would pay to the plaintiffs the rate of toll therein prescribed for the use of the canal in such transportation.

Provision is made by the agreement, it is admitted, that the rates of toll to be charged by the plaintiffs shall be permanently reduced, and the plaintiffs contend that the defendants, in consideration of that stipulation, assumed a correlative obligation to send all their coal brought over their railroad to market upon the plaintiffs' canal. Express covenant to that effect, it is conceded, is not to be found in the articles of agreement, but the plaintiffs contend that the obligation in that respect is so plainly contemplated by the agreement that the law will enforce it as an implied covenant as fully as if it were expressed in appropriate words.†

Undoubtedly necessary implication is as much a part of an instrument as if that which is so implied was plainly expressed, but omissions or defects in written instruments cannot be supplied by virtue of that rule unless the implication results from the language employed in the instrument, or is indispensable to carry the intention of the parties into effect; as where the act to be done by one of the contract-

---

* Aurora *v.* West, 7 Wallace, 94.
† United States *v.* Babbit, 1 Black, 61.

ing parties can only be done upon something of a corresponding character being done by the opposite party, the law in such a case, if the contract is so framed that it binds the party contracting to do the act, will imply a correlative obligation on the part of the other party to do what is necessary on his part to enable the party so contracting to accomplish his undertaking and fulfil his contract.

Three other examples are put in the case cited which it may be well to notice as illustrating the general principle, and as showing its true boundary when properly limited and applied.   They were first adduced at the bar, but were subsequently adopted and confirmed by the court in substance and effect as follows:

1. If one person covenants or engages by contract to buy an estate of another at a given price, the law will imply a corresponding obligation on the part of such other person to sell, although the contract is silent as to any such obligation, as the person contracting to purchase cannot fulfil his contract unless the other party will consent to sell.†

2. So if one person engages to work and render services which require great outlay of money, time, and trouble, and he is only to be paid according to the work he performs, the contract necessarily implies an obligation on the part of the employer to supply the work.

3. Persons often contract to manufacture some particular article, and in such cases the law implies a corresponding obligation on the part of the other party to take it when it is completed according to the contract, because if it were not so the party rendering the services and incurring the expense in fulfilling his contract could not claim any remuneration.‡

* Churchward v. The Queen, Law Reports, 1 Q. B. 195.

† McIntyre v. Belcher, 14 Common Bench, New Series, 664; Pordage v. Cole, 1 Williams's Saunders, 319, 1.; Whidden v. Belmore, 50 Maine, 360; Barton v. McLean, 5 Hill, 258.

‡ St. Albans v. Ellis, 16 East, 352; Randall v. Lynch, 12 East, 179; Shrewsbury v. Gould, 2 Barnewall & Alderson, 489; Gerrard v. Clifton, 7 Term, 676; Aspdin v. Austin, 5 Q. B. 671; Great Northern Railway Co. v. Harrison, 12 C. B. 576.

4. Instruments inartificially drafted, or where the language employed is obscure, imperfect, or ambiguous, are always open to construction, and the primary rule in all such cases, whether the contract is or is not under seal, is the intention of the parties; but the power of a court of common law extends no further than to collect such intention from the language employed as applied to the subject-matter, in view of the surrounding circumstances.*

5. Courts of law cannot incorporate into a sealed instrument what the parties left out of it, even though the omission was occasioned by the clearest mistake; nor can they reject what the parties inserted, unless it be repugnant to some other part of the instrument, and none of the authorities cited by the parties in this case, when properly applied, are inconsistent with the views here expressed.†

Examined in the light of the rules here suggested, the court is of the opinion that the articles of agreement set forth in the declaration contain no such covenants as those alleged by the plaintiffs as the foundation of their claim; that the terms of the agreement do not support the allegation that the defendants ever made any such covenants, nor that they ever agreed to pay toll except for coal actually transported under the agreement. Language to express any such contract is entirely wanting in the instrument, nor is there any covenant on the part of the plaintiffs from which any such implication can legally arise.

Reference is made by the plaintiffs to the provision of the agreement extending certain facilities to the boats of the defendants and covenanting for a permanent reduction in the rates of toll upon the plaintiffs' canal, as calling for a different construction of the articles of agreement, but it is quite obvious that those concessions were made as inducements to the defendants to locate and construct the contemplated railroad from their coal lands to the plaintiffs' canal,

* Tipton v. Feitner, 20 New York, 425.

† Bealey v. Stuart, 7 Hurlstone & Norman, 753; Whittle v. Frankland, 2 Best & Smith, 49; Pilkington v. Scott, 15 Meeson & Welsby, 657; Rigby v. Great Western Railway Co., 14 Id. 811; Seddon v. Senate, 13 East, 74.

so as to form a continuous line of transportation from the coal mines, over the canal, to tide-waters.    Great advantages were expected to result from the completion of that railroad, and it is quite evident that the plaintiffs were willing to accept the prospect of increased freight for transportation upon their canal as affording full compensation for the concession which they made in the articles of agreement.

Principal covenant of the defendants was that they would use all their influence to cause the speedy construction of the railroad, and the plaintiffs proffered the concessions described in the agreement to encourage the enterprise and secure its early completion.*

Support to these views might be drawn from the recitals in the first agreement and from the proceedings of the plaintiff corporation, but it does not seem to be necessary to pursue the subject, as the only covenant of any importance made by the defendants was the one before mentioned, that they would use all their influence to cause the speedy construction of the railroad; and the second agreement contains the recital that the covenant in that behalf had been fully performed as agreed, before the second articles of agreement were executed between the parties.

Unsupported as the declaration is by anything else contained in the record, it is clear that it must be adjudged insufficient, and as the first fault in pleading was committed by the plaintiffs, it follows that the judgment of the Circuit Court was correct.

JUDGMENT AFFIRMED WITH COSTS.

---

* Commonwealth v. Delaware & Hudson Canal Co., 43 Pennsylvania State, 302.