JOSEPH WALKER, JR., and Others, Copartners, Doing Business under the Firm Name and Style of JOSEPH WALKER & SONS, Respondents, *v.* NORTHERN AND WESTERN FINANCE AND TRADING CORPORATION, Appellant.

First Department, January 13, 1922.

Sales — action by buyer for breach of contract by seller to deliver bonds with coupon attached — measure of damages under Personal Property Law, § 148, is difference between contract price and market price on date upon which contract should have been performed — nominal damages proper where market had not risen on said date — negotiations for substituted contract cannot operate as extension of time for performance of original contract.

In an action by the buyer of bonds for the breach of a contract by the seller to deliver said bonds on a certain date with a specified coupon attached, the buyer is entitled to recover under section 148 of the Personal Property Law the difference between the contract price and the market price on the date upon which the contract should have been performed, and where it appears that at that time the market price had not risen the buyer is entitled to a verdict for nominal damages only.

Negotiations between the parties for a substituted contract to deliver the bonds without the specified coupon, entered into after the breach of the original contract, can in no way be construed to be negotiations for the performance of the original contract which could not then be performed and, therefore, could not operate as an extension of time for the performance of the original contract.

APPEAL by the defendant, Northern and Western Finance and Trading Corporation, from a judgment of the Supreme Court in favor of the plaintiffs, entered in the office of the clerk of the county of New York on the 11th day of February, 1921, upon the verdict of a jury, and also from an order entered in said clerk's office on the 8th day of March, 1921, denying defendant's motion to set aside the verdict and for a new trial made upon the minutes.

*Ehlermann, Smyth & Abbott* [*Clarence C. Meleney* of counsel; *George W. Smyth* with him on the brief], for the appellant.

*Van Vorst, Marshall & Smith* [*William Mason Smith* of counsel; *Joseph Walker, III,* with him on the brief], for the respondents.

SMITH, J.:

Upon the 23d day of July, 1920, the plaintiffs and defendant entered into an agreement whereby the defendant was to purchase and the plaintiffs to sell certain Mexican bonds at 32¼ per cent of the par value. No payment of interest had been made upon these bonds upon July 1, 1914, or at any subsequent time, so these bonds would have attached, naturally, the July coupon and all subsequent coupons. But the contract provided that the bonds were to be sold without the July coupon. They would have attached, however, the October coupon. Upon the twenty-seventh day of July, four days after the contract was made, the defendant communicated with the plaintiffs that it was unable to obtain these bonds from the source contemplated in Europe with the October coupon attached, and asked the plaintiffs if they would be willing to accept the bonds without the October coupon. No answer apparently was sent to this communication. Upon August fourth the defendant wrote to the plaintiffs as follows:

" Messrs. Jos. WALKER & SONS,

" 61 Broadway, New York City:

" GENTLEMEN.— With reference to our conversation regarding Mexican 5's sold to you recently, on which as we stated to you, the October coupons will be missing, we herewith inform you that we will order these bonds to be shipped over here provided you agree that the reduction in price to be made to you for the missing coupon will be fair and equitable and in proportion to the rest of the coupons or talons attached to these bonds.

" As soon as we have your confirmation to this end, we will immediately cable to our friends to ship these bonds.

" Very truly yours,

" NORTHERN & WESTERN FINANCE & TRADING CORPORATION

" By E. F. KUHN, *Treasurer.*"

This proposition contained in this letter of August fourth was not accepted by the plaintiffs, their only answer being if the defendant would get the bonds that they would inspect them and then determine whether they would accept them in performance of the contract. The defendant endeavored to

get these bonds without the October coupon, but apparently was unable to get them from its foreign correspondent. The original contract provided for the delivery of the property within thirty days from the date of the contract, which was July twenty-third, so that upon August 23, 1920, the contract should have been performed. The bonds were not furnished with the October coupon. There had been no agreement for a modification of the contract to accept the bonds without that coupon and the defendant was clearly liable and is clearly liable now for the difference in value between the contract price and the market price upon August twenty-third.

Under subdivision 3 of section 148 of the Personal Property Law (as added by Laws of 1911, chap. 571) the buyer is entitled upon breach of the defendant's contract to recover the difference between the contract price and the market price on the date upon which the contract should have been performed, which was August 23, 1920. At that time, however, the market value of the bonds was no greater than the purchase price and possibly slightly less. The court submitted to the jury the question as to whether the date of delivery was not extended. Upon October fourteenth a buying-in notice was served by the defendant upon the plaintiffs, and later, upon November fifth, tender was made of the original contract price with a demand for the bonds with the October coupon thereupon. If the time of performance of the contract was in fact extended beyond August twenty-third, the judgment is probably right, unless it be for the increased value of the bonds from October fourteenth to November fifth, the time of the actual tender, but there is no evidence in the case showing any agreement to extend the time for performance of the contract. The evidence of Adams, who represented the plaintiffs, shows that he did not expect the delivery of any bonds with the October coupon attached, as he testified " that had been settled so far as I knew," evidently referring to the assumption that the bonds could not be delivered as contemplated with the October coupon attached. The only negotiations thereafter made were not for the extension of the time of performance of the contract, but were for a substitution of a new contract with adjustment for the loss of the October coupon, which would amount to only a few dollars. From

August to October the plaintiff let the matter drop. In October, however, these bonds had prospects of rising in value, and before October fourteenth when the buying-in notice was served they had increased in value to the amount represented by the judgment. It became important, therefore, inasmuch as the price had not changed upon August twenty-third, for the plaintiffs to show an extension of time for the performance of the original contract in order to hold the defendant for the difference in value between the contract price and the market value as of October fourteenth. In addition to the evidence of Adams, representing the plaintiffs, to the effect that he considered it settled that they could not get the bonds with the October coupon attached, there is the evidence of Kuhn, the representative of the defendant, of conversations that he had with Horn, the representative of the plaintiffs, to the effect that they could not furnish the bonds with the October coupon attached. That evidence was not contradicted by Horn, although it appears in the record that Horn was in court and could have contradicted this evidence if that conversation had not occurred. It seems to me clear that the negotiations for a substituted contract to deliver the bonds without the October coupon can in no way be construed to be negotiations for the performance of the original contract which as assumed could not be performed and, therefore, could not operate as an extension of time for the performance of that original contract. The negotiations for the substituted contract were never consummated, as the plaintiffs never agreed to accept the substituted bonds without the October coupon.

Without any evidence whatever which would justify the finding of an extension of the time of delivery of the bonds contemplated in the contract, the breach of the contract occurred on August twenty-third, and that was the date upon which the court is required to estimate the difference in the market value and the contract price. Inasmuch as confessedly at that time the market had not risen, the plaintiffs were entitled to a verdict for six cents for breach of the contract and the verdict should be reduced to six cents and judgment be ordered upon the verdict thus reduced. This result is, I think, logical. Otherwise, where the vendor has

refused to perform the contract, the buyer may continue negotiations for a substituted contract and claim that, those negotiations having failed, the time to deliver the original bonds was extended, and the buyer would thus be allowed to speculate by continued negotiations until such a time as the bonds should have risen in value and then claim a breach as of the time of the failure to negotiate a substituted contract.

The judgment, therefore, should be modified by reducing the amount of the judgment as entered to the sum of six cents, without costs, and the judgment as so modified and the order appealed from are affirmed, with costs of this appeal to the appellant.

CLARKE, P. J., PAGE, MERRELL and GREENBAUM, JJ., concur.

Judgment modified by reducing the amount of the judgment as entered to the sum of six cents, without costs, and judgment as so modified and the order appealed from affirmed, with costs to appellant of this appeal.