PATRICK G. TIGHE, as Trustee under the Will of GEORGE McQUILLAN, Deceased, Plaintiff, *v.* EMPIRE BOND AND MORTGAGE CORPORATION, Defendant.

Supreme Court, New York County, June 21, 1932.

*Kleiner & Britwitz* [*Meyer Britwitz* of counsel], for the plaintiff.

*O'Brien, Boardman, Conboy, Memhard & Early* [*F. W. H. Adams* of counsel], for the defendant.

SHIENTAG, J. The plaintiff, in June, 1928, contracted to buy and the defendant to sell when, as and if issued, thirty-six $1,000 five and one-half per cent gold bond certificates secured by a first mortgage on specific real property and maturing in 1933. The

payment of the principal and interest was to be guaranteed by a surety company. Three months later the plaintiff paid for the bonds and the defendant delivered interim certificates describing the bonds ordered. When the plaintiff surrendered these interim certificates to the defendant he received in their stead bonds maturing in 1935 (except one bond, which matured in 1932). The defendant said nothing about the change in maturity date. The receipt which the plaintiff signed for the bonds was silent with respect to the date of maturity. It is not suggested that the defendant was unaware of the change. Bonds of the agreed maturity had not been issued in the amount of the sale. The plaintiff took the bonds, glanced over them to note the face value, and deposited them in the original folder in a safe deposit vault. About four months later the plaintiff went to the safe deposit vault to cut the interest coupons from the bonds. He then, for the first time, noticed the discrepancy in maturity date and promptly tendered back the bonds and demanded a return of the purchase price from the defendant. The defendant put off the plaintiff with indefinite promises for about two years, at the end of which period the plaintiff became convinced that the defendant was unwilling to return the purchase price of the bonds and brought suit therefor.

The defendant's refusal to return the purchase price rests upon two claims: *First*, that the plaintiff waived any right to rescind by receiving the bonds offered and failing to raise any objection for more than four months thereafter; *second*, that the change in maturity date, though it may give rise to an action for breach of warranty, is not a ground for rescission.

Undoubtedly the plaintiff was remiss in failing to note the maturity date printed on the face of the bond when he received the certificates. Ordinarily a four months' delay in objecting to a breach would preclude rescission. But no hard and fast rule can be laid down as to what constitutes a reasonable time for rescission, and in the instant case the plaintiff's delay must be laid at the door of the defendant. The defendant knew of the discrepancy, but said nothing about it in its correspondence with the plaintiff, although it did see fit to mention a change in the dates at which interest was to be paid. There is no reason why a seller should be permitted to complain of a delay which he could have avoided by calling the attention of the purchaser to a known defect. (2 Williston Sales [2d ed.], p. 1522.) Finally, the buyer's delay cannot here be said to have affected the seller's opportunity to correct his tender, as the bonds contracted for were never issued.

The continued negotiations of the plaintiff after his first notice

of rejection do not constitute a waiver of his rights. It was within the power of the defendant to terminate those negotiations, if it cared to, by taking an unequivocal stand. (*Joannes Brothers Co.* v. *Czarnikow-Rionda Co.*, 121 Misc. 474; affd., 209 App. Div. 868; *Sturm* v. *Williams Oven Mfg. Co.*, 201 id. 113.) Nor did the cashing of interest coupons by the plaintiff, at the advice of the defendant, constitute a waiver of the right of rescission. (*Bloomquist* v. *Farson*, 222 N. Y. 375.)

The plaintiff is, therefore, entitled to recover the purchase price of the bonds, having tendered the interest received, if the change of maturity date was such a breach as will justify a rescission.

Apart from statute, it has long been the law of this State that not every breach of contractual provisions by a seller will justify a rescission by the buyer. As was said in the case of *Rosenwasser* v. *Blyn Shoes, Inc.* (246 N. Y. 340, 346), involving a sale of stocks, " the default must be such that it destroys the essential objects of the contract." The severity of this rule is somewhat relaxed where the default is deliberate. Thus in the case of *Callanan* v. *K., A. C. & L. C. R. R. Co.* (199 N. Y. 268, 284), cited with approval in the *Rosenwasser* case, it is said that the right of rescission " is not permitted for a slight, casual or technical breach, but, as a general rule, only for such as are material and willful, or, if not willful, so substantial and fundamental as to strongly tend to defeat the object of the parties in making the contract."

In the instant case it is a fair inference, in the absence of rebutting evidence, that a discrepancy of two years in the maturity date of a short term bond constitutes a material and substantial breach of the seller's obligation. The evidence shows that notice of this discrepancy was intentionally withheld from the plaintiff. *Caveat emptor* is no longer the sum of economic morality. The seller in default, no less than the buyer who fails to express his objections, must heed the warning: " A duty to speak is imperative as matter of law where conduct, accompanied by silence, would be deceptive and beguiling." (*Brennan* v. *Nat. Equitable Investment Co.*, 247 N. Y. 486, 490.) Under the circumstances of this case, the plaintiff has brought himself within the reason of the rule permitting rescission for a material and willful breach of contract.

Of course, if the Sales of Goods Act (Pers. Prop. Law, art. 5, added by Laws of 1911, chap. 571) applies to a sale of bonds the plaintiff is entitled to rescind regardless of the importance or willfulness of the defendant's breach. (Pers. Prop. Law, § 150.) The case of *Walker* v. *Northern & Western Finance & T. Co.* (199 App. Div. 471) is not authority for the proposition that corporate bonds are " goods " within the definition of the Sales of Goods Act.

In that case the provisions of the Sales of Goods Act which were resorted to were merely declaratory of the common law. The Appellate Division has ruled that " shares of stock are subject to the Sales Act." (*Friedman* v. *Bachmann*, 234 App. Div. 267, 269.) This it did in reliance upon the case of *Wills* v. *Investors Bankstocks Corp.* (257 N. Y. 451). It is argued, and with much force, that if shares of stock come within the Sales Act, the same rule should apply to all corporate securities which are commonly the subject of barter and sale and which are evidenced by a tangible token. It may be that to conform to modern business conditions it will eventually be determined by appropriate legislation or by judicial interpretation that all corporate securities are subject to the Sales of Goods Act. (See *Manhattan Co.* v. *Morgan*, 242 N. Y. 38, 49, 52.) The present state of the law on the subject, as outlined in *Agar* v. *Orda* (144 Misc. 149), makes it inadvisable to assume that the *Friedman* case is authority beyond the question there actually decided. I have, therefore, considered the question of rescission in the light of the common-law tests, which still prevail in cases where the Sales of Goods Act does not apply.

Judgment is accordingly directed in favor of the plaintiff for the sum of $36,000 and interest (less interest payments received and interest thereon from the respective dates of receipt). Twenty days' stay of execution and sixty days to make a case. Settle order.