### ELIPHALET  PRAY  *vs.*  NATHAN  O.  MITCHELL.

*Partner—remedy of.   Joint stock company—sale of  shares in—within statute of
frauds.*

Equity and not assumpsit is the appropriate remedy for one whose membership
   and consequent right to share in the profits of a partnership are denied, and to
   whom no portion of the profits have been set apart.

The sale of an interest or of shares in a joint stock company is within the statute of
   frauds.

ON MOTION to set  aside  a  verdict  as  being  against  law  and  the
weight  of  evidence.

ASSUMPSIT.

For  that  the  said  defendant  at  said  Gardiner,  to  wit,  at  said  Au-
gusta,  on  the  day  of  the  purchase  of  this  writ,  being  indebted  to
the  plaintiff  in  the  sum  of  five  thousand  and  five  hundred  dollars,
according  to  the  account  annexed,  then  and  there  in  consideration
thereof,  promised  the  said  plaintiff  to  pay  him  that  sum  on  demand.
Also,  for  that  the  said  Mitchell,  at  said  Augusta,  on  the  day  of  the
date  of  this  writ  being  indebted  to  the  plaintiff  in  the  sum  of  five
thousand  and  five  hundred  dollars  for  so  much  money  before  that
time  had  and  received by  the  said  defendant  to  the  use  of  the  said
plaintiff,  in  consideration  thereof,  then  and  there  promised  the  said
plaintiff  to  pay  him  the  same  sum  of  money  on  demand.

Also, for that the said Mitchell, at said Gardiner, on the 22d day of January, A. D. 1870, in consideration that the said plaintiff would take a certain interest or share, to wit, one sixteenth part in and of a joint stock enterprise, then being got up in said Gardiner, by said Mitchell and others, for the purpose of cutting, securing, harvesting, and selling ice from the Kennebec river, then and there agreed and promised the said plaintiff to let him have, take, hold, and own a certain interest or share in said joint stock company, equal to one sixteenth part of the whole, and to retain said share, and to have the profits and dividends growing out of said business jointly with others and equal to one sixteenth part of the same, upon condition that said Pray would advance and pay to said Mitchell or to said company, when requested so to do, one sixteenth part of the assessments made and required for expenses incurred in organizing, operating, and carrying on said enterprise.

And the plaintiff avers, that, in consideration of the promises, he then and there agreed to take said interest in said enterprise, upon the terms and conditions offered by said Mitchell, and that he did thereafterwards, when requested, pay over to said Mitchell and to his order and for the use and benefit of said enterprise, his proportional part of the amount assessed and required by said Mitchell, and according to the regulations of said company, and at the times and in the manner required by said Mitchell, and that he was ready to pay and offered to pay any and all further sums assessed or required by said Mitchell and by said company, when requested so to do. Yet the said Mitchell, unmindful of his said agreement and disregarding his said promises refused, and still does refuse, to allow said plaintiff to take and hold any interest or share in said company, or to share or receive any dividends or profits growing out of said enterprise. And the plaintiff further avers that the value and net proceeds of one sixteenth part of said enterprise was and is of the value of five thousand and five hundred dollars, which said value and said sum said Mitchell has received out of and from said enterprise, and now holds and retains in his possession, which said sum, according to said agreement, is the property of and belongs

to this plaintiff, and which said sum said Mitchell declines and refuses to pay over or to account for to said plaintiff, although frequently requested so to do.

Plea, general issue, and brief statement of the statute of frauds, and alleging that he acted as agent of a company consisting of N. O. Mitchell, Benj. Clark, John T. Richards, C. A. & J. D. White, Josiah Maxy, Enoch Miller, I. A. Stanwood, W. F. Richards, and Jas. S. Barker, in carrying on the business or enterprise set forth in plaintiff's writ; and, as such agent, received any moneys paid to him to carry on the enterprise, and for the proceeds of the sales of ice; and that all contracts made by him in relation to said business or enterprise were made as the agent of said company.

It appeared that on Jan. 22, 1870, the defendant, holding a lease of land upon which this ice operation was carried on, conveyed three-fourths of his interest in the lease to Enoch Miller, C. A. & J. D. White, John T. Richards, W. A. Richards, I. A. Stanwood, J. Maxy, B. Clark, and J. S. Barker, and on the same day the defendant and those to whom he assigned the three-fourths interest in the lease entered into articles of copartnership 'for the purpose of carrying on the business of procuring ice in the town of Dresden, on the premises leased, the business to be owned in the proportion of one-fourth part by N. O. Mitchell, one-eighth by E. Miller, one-eighth by C. A. & J. D. White, one-eighth by John T. Richards, one-sixteenth by W. F. Richards, one-sixteenth by I. A. Stanwood, one-sixteenth by J. Maxy, one-sixteenth by B. Clark, and one-sixteenth by J. S. Barker.' Each to be responsible for his respective part of all expenses in the business, and to receive his share of profits, and bear his proportion of loss, etc.

The plaintiff testified, *inter alia,* substantially,

That on the 24th, two days after the articles were drawn up and signed, in consequence of information from Miller, plaintiff went to Mitchell's office and asked Mitchell if plaintiff could have some of the stock; that he wanted to put in $500 or $600; that after some conversation, Mitchell said he might have what he wanted. That it was then contemplated to put in $8,000 to $10,000; and plaintiff

told Mitchell he was going to Brighton with some cattle, and on his return he would put in some money.

That Mitchell showed him no lease or articles of copartnership, nor what shares different men had taken ; that Mitchell said the Whites wanted all he could spare ; that Mitchell did not say how much he would let plaintiff have ; that plaintiff did not say he wanted a sixteenth, but would put in $500 to $600, which amounted to one-sixteenth of what they calculated to put in.

In regard to the money paid in by him, he testified substantially,

That on Feb. 12th, he went to Mitchell's office and told Mitchell he wanted to pay $600 for Clark, and $400 for self; handed Mitchell $800 cash, and check of $232.75, and told him to give balance of check back and left $1000. Mitchell said he would credit it to Clark, and told his clerk to give plaintiff $32.75, and he did.

That on the next Saturday plaintiff paid Mitchell $300 for Clark, and $300 for self.

The remaining facts sufficiently appear in the opinion.

*A. Libbey,* for the plaintiff.

*E. F. Pillsbury,* for the defendant.


WALTON, J. This is an action of assumpsit. The plaintiff has obtained a verdict for $4,450.74. The defendant moves to have the verdict set aside upon the ground that it is against law and against evidence. The question is, whether the verdict can be allowed to stand. We think it cannot. We fail to perceive any ground upon which it can be sustained. Certainly it cannot upon the ground that the plaintiff was a member of the firm of N. O. Mitchell & Co. That firm was created by written articles of agreement. The names of its members are not only signed at the bottom of the agreement, but they are mentioned in the body of it. The plaintiff's name is not among them. The plaintiff not only did not sign the agreement, but he admits that he never saw it; and his name is not mentioned in it. The entire capital is apportioned among the members of the firm who did sign it, and there

was no interest remaining which it was possible for any third party to own or possess. To admit the possibility of such an ownership would be in direct conflict with the express terms of the written agreement. Besides, an action of assumpsit is not the appropriate remedy for one whose right to share in the profits of a partnership is denied. If the plaintiff's membership and right to share in the profits of the partnership were admitted, and his share had actually been apportioned and set out to him, and was now in the hands of the defendant, we do not mean to say that an action of assumpsit would not lie to recover it, as so much money had and received to the plaintiff's use. But when, as in this case, the plaintiff's membership and consequent right to share in the profits of the partnership are denied, and no portion of the profits have been set apart for him, we think it is clear that no such action can be maintained. Process in equity is the appropriate remedy. *Holyoke* v. *Mayo*, 50 Maine, 385, and authorities there cited.

Assuming, therefore, that it is impossible to sustain the verdict upon the ground that the plaintiff was a member of the firm of N. O. Mitchell & Co., both because he never signed the agreement by which that copartnership was formed, and because an action of assumpsit would not be the proper remedy if he had signed it, we come to the inquiry whether it can be sustained upon the ground that the plaintiff made a contract with the defendant alone for a share of his individual interest in the capital stock of the company. We think it cannot for two reasons. The first is that the evidence, fairly construed, will not support such a conclusion. The other is that a contract for the sale of an interest or shares in a joint stock company, is within the statute of frauds; and in the absence of the other requisites of the statute, must be proved by some note or memorandum in writing. So held in *Tisdale* v. *Harris*, 20 Pick. 9, and in *North* v. *Frost*, 15 Conn. 400. In the former case the question was very fully considered, and the conclusion reached was that there was nothing in the nature of stocks, or shares in companies, which in reason or sound policy ought to exempt contracts respecting them from those reasonable restrictions, designed by the

statute to prevent frauds in the sale of other commodities; that on the contrary, joint stock companies have become so numerous, and so large an amount of the property of the community is now invested in them, and as the ordinary *indicia* of property arising from delivery and possession, cannot take place, there seems to be peculiar reason for extending the provisions of the statute to them; that the words 'goods' and 'merchandise' may properly include stock, or shares in such companies; and as contracts for the sale of such stock or shares is clearly within the mischief which the statute was designed to prevent, they ought to be held to be within its letter and spirit. And in the latter case the court say that this doctrine is not only supported by the greater weight of authority, but that it is founded upon good sense; that such contracts fall clearly within the mischiefs which the legislature intended to remedy; for there is as much danger of fraud and perjury in the parol proof of contracts for the sale of interests in joint stock companies as in contracts for the sale of any other commodities. It is true that in England it has been held in one case that a contract for the sale of shares in a joint stock banking company is not within the statute of frauds. *Humble* v. *Mitchell*, 11 Adolph. & Ellis, 207. And in another case the twelve judges were equally divided upon the question. *Pickering* v. *Appleby*, Com. Rep. 354. But in this country, and in this State as well as Massachusetts and Connecticut, the doctrine of *Tisdale* v. *Harris*, has not only been sanctioned, but it has been extended so as to include the sale of promissory notes. *Baldwin* v. *Williams*, 3 Met. 365; *Gooch* v. *Holmes*, 41 Maine, 523.

The firm of N. O. Mitchell & Co., was to all intents and purposes a joint stock company. The stock was divided into sixteenths. The defendant owned four sixteenths, which was equal to one-quarter of the whole. The plaintiff testifies that it was then contemplated to put in from eight to ten thousand dollars. A sixteenth would therefore be worth not less than five hundred dollars. The plaintiff avers in his declaration that he agreed to take a certain interest, to wit, 'one-sixteenth part in and of a joint stock enterprise.' It is true that in his testimony he denies that he ever said he was

to have a sixteenth.   He says he told Mitchell (the defendant) he would take five or six hundred dollars, which amounted to one-sixteenth of what they calculated to put in at the time; that he was to have his stock in proportion to the amount he put in.   This variance, if any, between the allegations in the writ and the proof, is not now material.   What we wish now to show is, that if there was a contract for the sale of a portion of the defendant's stock to the plaintiff, it was for an amount exceeding thirty dollars, as it is to such sales only that the statute of frauds of this State applies. The plaintiff says, in substance, that the contract was for the purchase of five or six hundred dollars' worth.   Now if we assume that this was not a contract or agreement to become a member of the firm, but a contract with the defendant alone, to purchase a share of his individual interest in the capital stock of the company, must it not, in the absence of delivery, which was impossible, and in the absence of earnest or part payment, which is not claimed, be proved by some note or memorandum in writing, signed by the party to be charged, or by his agent?   Clearly so.

Our conclusion, therefore, is, that the verdict must be set aside and a new trial granted.                    *Motion sustained.*

*Verdict set aside.*

*New trial granted.*

APPLETON, C. J.; KENT, DICKERSON, and BARROWS, JJ., concurred.