SPRAGUE *v.* HOSIE.

1. CONTRACTS—OFFER—CONTINUING OFFER—WHAT CONSTITUTES.
   A letter respecting a sale of corporate stock, in which the writer states that he " would not sell for less than 154 net at this time," if it can be said to contain an offer to sell, is not a continuing offer; and even if it were, a refusal would end the negotiations, there being no renewal of the offer.

2. STATUTE OF FRAUDS—GOODS—CORPORATE STOCK.
   Stock in an incorporated company, the shares of which have been actually issued, are " goods " within the meaning of the statute of frauds (section 9516, 3 Comp. Laws).

3. SAME—PLEADING—DECLARATION—SUFFICIENCY.
   A declaration in an action for breach of a contract to sell corporate stock is good though it alleges no facts to show whether or not the contract was obnoxious to the statute of frauds.

4. SAME—PLEADING—DEFENSES—GENERAL ISSUE.
   In an action for a breach of a contract for the sale of corporate stock, the defense that the contract is unenforceable under the statute of frauds is available under the plea of the general issue, without notice of the special defense.

5. PLEADING—DEFENSES—GENERAL ISSUE—SCOPE.
   The scope of the plea of the general issue is as a general rule a denial of every material averment of fact in the declaration.

Error to Wayne; Rohnert, J. Submitted November 13, 1908. (Docket No. 27.) Decided November 30, 1908.

Assumpsit by Thomas S. Sprague against James R. Hosie for breach of a contract for the sale of certain bank stock. There was judgment for defendant on a verdict directed by the court, and plaintiff brings error. Affirmed.

*Frederic T. Harward*, for appellant.

*Stellwagen & MacKay*, for appellee.

The suit is brought to recover damages alleged to have

been sustained by the plaintiff by reason of the refusal of defendant to perform his contract to sell plaintiff 20 shares of bank stock at $154 a share. The declaration contains the common counts in assumpsit and a special count in which the said contract and a breach thereof are averred. The plea is the general issue. Defendant offered no testimony. A verdict for defendant was directed by the court, and judgment on the verdict was entered. Plaintiff is a dealer in stocks and bonds. He testified, however, that he desired to purchase this stock for himself, and not for any client. In a letter written by him to defendant of date August 22, 1906, is the following:

"I have a client who may purchase a limited amount of Michigan Savings Bank stock. * * * If you decide to offer the stock to me, please make the price to hold good until September 1st as my client is hard to find at times and it may take 2 or 3 days to hear from him."

In reply defendant of date August 30th wrote:

"Replying to above, I have only 20 shares Mich. Sav. Bank stock and will sell same for 155 or 3,100.00 net. This is the best price I can make. Have refused an offer of 150; on account of vacations your letter has been neglected till now."

Of date November 5, 1906, plaintiff again wrote to defendant, saying:

"If you wish to sell your 20 shares of Michigan Savings Bank stock at this time at $149.00 per share net to you, I think I can make sale of the same"—concluding the letter as follows:
"If you desire to let me offer the stock for sale at this price, please make price good for this week, as tomorrow is a holiday and it may take a day or two after that to accomplish anything."

The reply, dated November 7th, was:

"I have an offer of 150 Jan. 1, 1907. In the meantime I will get a dividend of 4 to 5 per cent. Would not sell for less than 154 net at this time."

Plaintiff on November 12th again wrote defendant:

"Replying to your favor of the 7th inst. regarding 20 shares of Michigan Savings Bank stock, which you offered to sell at 154 net to you, if you will sell 5 shares at 153, I will take it, if I am not supplied when I hear from you. Please advise me at once.   I purchased some of this stock at a much less price since writing you and my client is willing to pay 153 for 5 shares to even up the block, if the matter is closed at once.   I have no doubt I can get it for less money by looking around, but he told me to make you this offer to close the matter without delay.   I do not see how you expect to get 4 to 5 per cent. dividend January 1st, as the bank is only paying 7 per cent. per annum, which would make the accrued dividend about 2.60 per cent. at this date."

To this defendant made no reply.  The plaintiff testified that on November 17th, by telephone, he advised defendant that he would take 20 shares at $154 a share, and told defendant to send the certificate with draft attached to the savings bank, and that defendant said he would send the stock, but that it might be two or three days before he could do so; that immediately thereafter, on the same day, he sent to defendant a letter confirming the offer made by telephone.   This letter was not produced.   A motion to strike out the testimony of the oral communication was granted, and plaintiff excepted.   Later, on December 7th, plaintiff demanded the stock, saying he was ready to pay for it, but defendant refused to deliver the stock, claiming he had never bargained for its sale.   Later, a tender, in the form of a cashier's check for $3,080, was made to defendant and was refused.   On December 7th the market value of the stock was $180 per share, plus a dividend of $3.50 per share.   It is claimed on the part of appellant, *first*, that the letters make a complete and binding contract; *second*, that bank stock, ownership of which is usually evidenced by certificates, is not goods, wares, or merchandise within the meaning of the statute of frauds; *third*, that the defense that the contract, if resting in parol, was void under the statute of frauds, was waived because no notice of such defense was given with defendant's plea.

OSTRANDER, J. (*after stating the facts*).  1. There was no continuing offer to sell the stock at the price of $154 a share.  Defendant's letter of November 7th, if it can be said to contain an offer to then sell the stock, was not a continuing offer.  Moreover, whether it be treated as a present or a continuing offer to sell, it was refused and was not thereafter renewed.  The bargain, if one was made, rests in parol.

2.  Whether stock in an incorporated company, the shares of which have been actually issued, is goods, wares, or merchandise, within the meaning of the statute of frauds (3 Comp. Laws, § 9516), is a question which has been answered differently in different jurisdictions.  In essentials our statute is a copy of the seventeenth section of the statute of Charles II, and was adopted in this jurisdiction in 1819 from the laws of the State of New York.  The English courts, to a period as late as 1839, had not apparently determined conclusively, that such shares were or were not within the statute.  *Mussell* v. *Cooke*, Pre. Ch. 533; *Crull* v. *Dodson*, Sel. Cas. in Ch. 41.  Lord Denman in *Humble* v. *Mitchell*, 11 Ad. & El. 205, a case decided in 1839, held with the concurrence of his associates that "shares in a joint stock company like this [a bank] are mere choses in action, incapable of delivery, and not within the scope of the seventeenth section.  A contract in writing was therefore unnecessary."  It is stated in the opinion that no case had been found directly in point.  *Humble* v. *Mitchell* has apparently been since followed in England.  See 29 Am. & Eng. Enc. Law (2d Ed.) p. 961; 20 Cyc. p. 244; 1 Beach on Modern Law of Contracts, § 558.  See, also, note to *Weightman* v. *Caldwell*, 4 Wheat. (U. S.) 85-89.  In 1838, in *Tisdale* v. *Harris*, 20 Pick. (Mass.) 9, the precise converse of the modern English rule was laid down; it being decided that the words "goods" and "merchandise," are broad enough in meaning to include stocks or shares in incorporated companies.  The rule is affirmed in *Boardman* v. *Cutter*,

128 Mass. 388.    To the same effect are *North* v. *Forest*,
15 Conn. 400; *Pray* v. *Mitchell*, 60 Me. 430; *Spear* v.
*Bach*, 82 Wis. 192; *Johnson* v. *Mulvy*, 51 N. Y. 634.    It
must be admitted that at the common law shares of an
incorporated company occupied much the same position
as promissory notes and other mere choses in action.
Indeed, it is held in Massachusetts that a promissory note
is within the statute.    *Baldwin* v. *Williams*, 3 Metc.
(Mass.) 365.    To the contrary is *Vawter* v. *Griffin*, 40
Ind. 593, which approves the rule of *Humble* v. *Mitchell*.
Such shares have, however, come to be subjects of com-
mon barter and sale, are usually evidenced by certificates
which, in the absence of statute provisions, operate by as-
signment and delivery to transfer title to the shares as
between the parties.    They are in this State by statute
subject to levy and sale on execution.    In many other re-
spects they are treated as something more than mere
choses in action.    It was said by this court in *Weston* v.
*McDowell*, 20 Mich. 353, 357, in considering the meaning
to be given the words "goods, wares and merchandise,"
as employed in the common counts in assumpsit, that it
has always been considered that the phrase as employed
in the statute of frauds embraced animate as well as in-
animate property, and that the word "goods" may well
include oxen.    The case is not in point here except as
indicating that a broad rather than a narrow meaning
should be given to the word "goods."    That contracts for
the sale and delivery of shares of stock are subject to the
mischief aimed at by the statute, must be admitted.    We
are of opinion that reason and the weight of authority
favor the conclusion that shares of stock in an incorporated
company, the shares having been issued, are *goods*
within the meaning of the statute of frauds.    It follows
that the parol contract for their sale was invalid.

3. The declaration alleged no facts to show whether
the contract sued upon was or was not obnoxious to the
statute.    It was nevertheless a good pleading.    *Dayton*
v. *Williams*, 2 Doug. (Mich.) 31; *Harris Photographic*

*Supply Co.* v. *Fisher*, 81 Mich. 136; *Stearns* v. *Railway Co.*, 112 Mich. 651; *Kroll* v. *Diamond Match Co.*, 106 Mich. 127.  See, also, 9 Enc. Pl. & Prac. p. 700; *Seaman* v. *O'Hara*, 29 Mich. 66, 67.  The language of the statute in question here is:

"No contract for the sale of any goods, wares or merchandise, for the price of fifty dollars or more, shall be valid, unless," etc.

It is clear that such a contract may be valid and enforceable, although no note or memorandum in writing of the bargain be made and signed by the party to be charged therewith.  The plaintiff in his declaration asserts the existence of a valid contract and upon the motion or objection of the defendant must prove such an one.  The scope of the plea of the general issue is as a general rule a denial of every material averment of fact in the declaration.  The precise question presented was answered adversely to plaintiff's contention in *Third Nat. Bank of New York* v. *Steel*, 129 Mich. 434 (64 L. R. A. 119).

It follows that the judgment must be, and it is, affirmed.

MONTGOMERY, HOOKER, MOORE, and McALVAY, JJ., concurred.