ALBERT C. WILLS, Respondent, *v.* INVESTORS BANK-STOCKS CORPORATION, Appellant. (Actions 1 and 2.)

452

(Argued October 14, 1931; decided November 17, 1931.)

*Charles H. Meyer* and *Jerome G. Rosenhaus* for appellant. Title to the shares of stock did not pass to the plaintiff upon any theory of agency. (*Wamsley* v. *Atlas S. S. Co.*, 168 N. Y. 533; *McCoy* v. *American Express Co.*, 253 N. Y. 477.) The firm with which plaintiff did business acted as a dealer and not as a stockbroker in these transactions. (*Gast* v. *Buckley*, 64 S. W. Rep. 632; *White* v. *Brownell*, 2 Daly, 329; *Markham* v. *Jaudon*, 41 N. Y. 256; *Coolidge* v. *Old Colony Trust Co.*, 259 Mass. 515; *Trowbridge* v. *O' Neill*, 243 Mich. 84; *Matter of Solomon & Co.*, 268 Fed. Rep. 108; *Porter* v. *Wormser*,

94 N. Y. 431.) The law of principal and agent applicable to the relationship of stockbroker and customer cannot be applied. (*Le Marchant* v. *Moore*, 150 N. Y. 209; *Roca* v. *Byrne*, 145 N. Y. 182; *Markham* v. *Jaudon*, 41 N. Y. 256; *Richardson* v. *Shaw*, 209 U. S. 365; *Papadopulos* v. *Bright*, 264 Mass. 42; *Crehan* v. *Megargel*, 235 Mass. 279; *Chase* v. *Boston*, 180 Mass. 458; *Rice* v. *Winslow*, 180 Mass. 500; *Hall* v. *Paine*, 224 Mass. 62; *Gifford* v. *Eastman*, 251 Mass. 520; *Trowbridge* v. *O' Neill*, 243 Mich. 84.) Title to the shares of stock did not pass to the plaintiff under the law of sales for the transactions involve executory contracts of sale. (*Decker* v. *Furniss*, 14 N. Y. 611; *Anderson* v. *Read*, 106 N. Y. 333.) Title to property, not transferable at the date of the sale, does not pass until there has been an appropriation to the contract. (Pers. Prop. Law, § 156; *Coolidge* v. *Old Colony Trust Co.*, 259 Mass. 215.) No appropriation of the stock to the contracts is shown. (Pers. Prop. Law, § 100, rule 4, subd. 1.)

*Howard C. Kelly* for respondent. Title to the shares of stock passed to plaintiff and an action for conversion lies. (*Markham* v. *Jaudon*, 41 N. Y. 235; *Richardson* v. *Shaw*, 209 U. S. 365; *Strickland* v. *Magoun*, 119 App. Div. 114; 190 N. Y. 545; *Douglas* v. *Carpenter*, 17 App. Div. 329; *Shiel* v. *Stoneham*, 77 Misc. Rep. 125; *Taylor* v. *Ketchum*, 28 ₁N. Y. Super. Ct. 507; *Mann* v. *Sands*, New York City Court Rep. 25; *Le Marchant* v. *Moore*, 150 N. Y. 209; *Talmage* v. *Third Nat. Bank*, 91 N. Y. 531; *Kittridge* v. *Grannis*, 214 App. Div. 486; 244 N. Y. 168; *Rumery* v. *Brooks*, 205 App. Div. 283; *Brown* v. *Carpenter*, 182 App. Div. 650; *Rosenkranz* v. *Saberski*, 40 Misc. Rep. 650; *Mullen* v. *Quinlan & Co.*, 195 N. Y. 109; *Eno* v. *Sage*, 83 Misc. Rep. 389; *Weaver* v. *Barden*, 49 N. Y. 286; *Matter of Mills*, 125 App. Div. 730; 193 N. Y. 626; *Tuckerman* v. *Mearns*, 262 Fed. Rep. 607; *Trowbridge* v. *O' Neill*, 243 Mich. 84; *Van Tine* v. *Hilands*, 131 Fed. Rep. 124.) The defendant never had the right

of setoff. (*Morris* v. *Windsor Trust Co.*, 213 N. Y. 27; *American Brake Shoe & Foundry Co.* v. *New York Rys. Co.*, 10 Fed. Rep. [2d] 920; *Topas* v. *Grant*, 18 Fed. Rep. [2d] 724; *Van Zandt* v. *Hanover Nat. Bank*, 149 Fed. Rep. 127; *Wycoff* v. *Anthony*, 90 N. Y. 442.)

*Carl A. de Gersdoff* for Association of Bank Stock Dealers of New York, *amicus curiœ.*

LEHMAN, J. The defendant is a dealer in bank and insurance company stocks which are not bought and sold on the Stock Exchange and are known as " over the counter " securities. Its place of business was connected with the place of business of J. S. Schofield & Co., in Waterbury, Conn., by a private wire for " teletype " messages. The plaintiff made an agreement on November 18, 1929, with J. S. Schofield & Co. for the purchase of twenty shares of Ætna Life Insurance Company stock at the price of $101½ per share. It does not appear whether the plaintiff understood that he was buying the stock from J. S. Schofield & Co. as dealers, or through J. S. Schofield & Co. as brokers, but he received a " confirmation of sale " over the signature of J. S. Schofield & Co. stating: " We are pleased to Confirm Sale to you to-day November 19th, 1929, of 20 Ætna Life Insurance 101½, $2,030." On November 20th the plaintiff agreed to purchase 10 shares of the stock of Equitable Trust Company and received from J. S. Schofield & Co. a similar memorandum.

The stocks which the plaintiff agreed to buy were not at that time in the possession of J. S. Schofield & Co. Indeed, the stock of Equitable Trust Company was " new " stock which had not at that time been issued. J. S. Schofield & Co., in its turn, agreed to purchase similar stock from the defendant, but at a price several dollars per share less than the price which plaintiff agreed to pay. Prior to each purchase from the defendant, the defendant had been informed by J. S. Schofield

& Co. that they desired to purchase that stock to fill an order for a customer at a higher price. Promptly after each purchase, the defendant received notice from J. S. Schofield & Co. that the stock purchased should be transferred to the name of the plaintiff, and in letters confirming the notices, previously sent over the private wire, J. S. Schofield inclosed their check for the purchase price of the stock " to eliminate the possibility of delay in transfer." The receipt of these checks was acknowledged by the defendant in letters which stated, " we have this day placed " the stock " in transfer into the name of Albert C. Wills, 93 Bank Street, Waterbury, Conn."

The statements contained in the letters that the defendant had " this day " placed the stock in transfer was untrue. In fact, though the defendant had purchased stock to fill the order received from J. S. Schofield & Co., no such stock had been delivered to the defendant at that time. Before the stock was delivered to the defendant, J. S. Schofield & Co. had become bankrupt, and owed the defendant a large sum of money on a general account, though the purchase price of this particular stock had been paid to the defendant. Then the defendant refused to deliver the stock, though it retained the purchase price. The plaintiff, claiming that he is the owner of the stock, has brought two actions, which have been tried together, for its conversion.

The defendant attempts to justify its refusal to deliver the stock to the plaintiff on the ground that it agreed to sell the stock to J. S. Schofield & Co. as principal and not as the plaintiff's broker; that it received from the buyer the purchase price of the stock in advance of delivery, and that, though it may be accountable to J. S. Schofield & Co., the buyer, or to the trustee in bankruptcy, for the moneys received in advance, it may apply those moneys upon the amount due to it from the bankrupt on its general account. The Appellate Division, holding that the defendant had notice that J. S. Schofield & Co.

acted as agent or broker for the plaintiff in purchasing the stock, and that the defendant may not defeat the claim of the plaintiff by an assertion that it was dealing with the broker as a principal (*LeMarchant* v. *Moore*, 150 N. Y. 209), directed judgment in favor of the plaintiff for the value of the stock.

Perhaps the checks in payment for the stock were delivered to defendant, not only in advance of delivery of the stock, but conditionally upon the transfer of the stock to the plaintiff. Perhaps the moneys so delivered to the defendant belonged to the plaintiff, and the defendant received them with notice of the plaintiff's ownership. We do not now pass upon the ethical or legal justification of defendant's claim that it may apply those moneys upon an indebtedness due from J. S. Schofield & Co. The plaintiff has not demanded back the purchase price. He does not claim title to the moneys paid to the defendant. He claims title to the stock which the defendant agreed to sell, and he can recover only upon proof that title at some time passed to him.

We need not now decide whether there is any evidence to sustain the finding of the Appellate Division that J. S. Schofield & Co. acted as brokers for the plaintiff in purchasing the stock. Even though we should assume that the defendant's contract for the stock was made with the plaintiff as the disclosed principal of J. S. Schofield & Co., yet, under that contract, no title to the stock passed at that time to the plaintiff. The seller did not, at that time, have title to the stock which it agreed to sell, and did not make any contract whereby it undertook to make a present transfer of the property in specific goods. The defendant's contract was a " contract whereby the seller agrees to transfer the property in goods to the buyer." (Pers. Prop. Law; Cons. Laws, ch. 41, § 82.) The goods were then unascertained. The defendant might thereafter acquire goods of the stipulated description for the purpose of complying with its contract to transfer

property in goods of that description to the buyer, but the property in the goods acquired would pass to the buyer only when such goods " in a deliverable state are unconditionally appropriated to the contract * * * with assent of the buyer." (Pers. Prop. Law, § 100, rule 4; *Coolidge* v. *Old Colony Trust Co.*, 259 Mass. 515.)

It has been said that, probably, the rule that property in goods passes by mere appropriation on the part of the seller with the assent of the buyer " has been reached by an extension of the doctrine of delivery." (1 Williston on Sales [2d ed.], § 274, note 14.) In order to pass property in unascertained or future goods " appropriation," even with the assent of the buyer, must be more than " a selection on the part of the vendor, where he has the right to choose the article which he has to supply in performance of his contract." (*Wait* v. *Baker*, 2 Exch. 1; *Procter & Gamble Co.* v. *Peters, White & Co.*, 233 N. Y. 97.) Something must be done, or, at least, something must happen, which by assent of both parties shall carry out their intent that at that point property shall actually pass to the buyer. Then where the seller still retains possession, he, " by operation of law becomes bailee of the goods." (1 Williston on Sales, § 274, note 14.)

Doubtless here the evidence shows that both the plaintiff and J. S. Schofield & Co. assented to a transfer of property in stock which the defendant might thereafter unconditionally " appropriate " to the contract by placing stock of the stipulated description " into transfer " in the plaintiff's name. The defendant wrote that it had made such appropriation, though it had no title to and was not in possession of any stock of that description. In fact it never made any appropriation of the stock in the manner assented to by the buyer, and, therefore, no property in the stock which it agreed to sell ever passed to the buyer. Certainly if the certificates of stock which the defendant had purchased and intended to appropriate to the contract had been lost or destroyed, the conse-

quent loss would have fallen on the defendant and not the plaintiff.

It is said that the defendant should be estopped from denying the representation it made in its letters, that stock had been appropriated to the contract; and that when stock of the stipulated description came into the defendant's possession, the property in that stock passed to the plaintiff, by reason of that estoppel. We do not attempt now to define the limits of the doctrine that a seller may be estopped by his own acts from a denial that title to property has passed and that title may pass by estoppel. (See 1 Williston on Sales, §§ 130, 131.) No estoppel arises in any case where there has been no act done and no change of position in reliance upon an untrue representation. Here the buyer paid the purchase price before the representation was made, and thereafter took no action and refrained from no action he might otherwise have taken, in reliance upon that representation. His position is exactly the same as if no such representation had been made.

If the plaintiff owned the money paid for the purchase price of the stock and the defendant accepted the price with notice of the plaintiff's ownership, the plaintiff may be able to recover the purchase price so paid in an appropriate action. Perhaps the plaintiff may have a cause of action for breach of contract, either as the disclosed principal or the disclosed assignee of the contract to sell made by the defendant. Such questions must be decided in appropriate actions. The plaintiff has failed to establish a cause of action for conversion, since no title to any stock passed to the buyer under the contract to sell.

The judgments should be reversed and the complaint dismissed, with costs in all courts.

CRANE, J. (dissenting). The opinion of my associate, Judge LEHMAN, in this case has applied to stock certificates the Personal Property Law relating to sales. This, I think, is a mistake. The Personal Property Law applies

to the buying and selling of commodities, things that can be manually delivered. Stock is a chose in action, a mere fractional interest in the capital of a corporation. That interest is evidenced by a certificate which certifies the share of the holder. The certificate, however, is not the thing which is bought and sold. Any particular certificate of stock may be delivered to meet the contract of sale. A broker or agent does not buy any particular certificate. (*Richardson* v. *Shaw*, 209 U. S. 365.) Can title to stock pass without delivery of the certificate of stock? We have given the answer in *Le Marchant* v. *Moore* (150 N. Y. 209), where we held that the notification by Evans & Company, brokers, to their client in England, that they had purchased stock in compliance with an order, passed title to the stock, although the certificates were held by Moore & Schley in New York.

With this background of law, and applying it to the facts in this case, I reach a different conclusion from the prevailing opinion. The plaintiff, Albert C. Wills, lived in Waterbury, Conn., at which place J. S. Schofield & Co. maintained a stock brokerage office. They had direct line communication with the defendant corporation, the New York city correspondent. Wills purchased through Schofield & Co., Ætna Life Insurance Company stock and Equitable Trust Company stock. The order was given by Schofield to the defendant, the Investors Bank-stocks Corporation, which purchased the stock and so informed Schofield. The plaintiff paid Schofield and he paid the defendant in full, so that it had no lien upon the stock for any moneys advanced in that particular transaction. At the time the purchase price was paid Schofield notified the defendant that the stock was bought and paid for in behalf of Wills, the plaintiff, and asked to have the certificates, the evidence of the stock interest, transferred to Wills' name. The defendant wrote back notifying Schofield that it had purchased the stock, held it for Wills and would have the certificates put in Wills'

name. The correspondence establishes these facts beyond peradventure of a doubt, as to the Ætna Life Insurance Company stock.

"November 19, 1929.

"INVESTORS BANKSTOCKS CORP.
   "30 Broad Street
       "New York City

"GENTLEMEN: Through the teletype this morning, we advised you to have twenty shares of Ætna Life Insurance Company stock transferred to the name of Albert C. Wills. To eliminate the possibility of delay in delivery of this stock we are inclosing our check for $1980.00 and hope that you will forward stock to us as soon as transferred so we can make delivery to our client.

                "Very truly yours,
                   "J. S. SCHOFIELD & CO.
                       "L. A. BOUET
                           "G. H."

                                "November 20, 1929.
"J. S. SCHOFIELD & Co.
       "Waterbury, Conn.

"GENTLEMEN: We acknowledge receipt of your check for $1980.00 covering T-9 of November 19th, and have this day placed twenty (20) shares Ætna Life Insurance Company into transfer in the name of Albert C. Wills, 95 Bank Street, Waterbury, Connecticut, in accordance with your instructions.

                "Yours very truly,
       "INVESTORS BANKSTOCKS CORPORATION
                "WILLIAM J. AHLBART,
                       "Asst. Cashier."

In my judgment title to the stock passed to Wills. The possession, subsequently, of the certificates by the defendant was the possession of the title-evidence to the plaintiff's property; these certificates were evidence of the stock or the stock interest which the defendant had purchased through Schofield for Wills, the disclosed principal. They belonged to Wills. It is not the certifi-

cates which the defendant has converted, but the stock, the fractional interest represented by the certificate. This has the value; the certificate is mere paper.

The Personal Property Law regarding the appropriation of certain goods by a seller to a contract of purchase has no application. I think the defendant has no right to hold these shares of stock, fully paid for, and apply them on a general indebtedness owing to it by Schofield. The judgment should be affirmed.

CARDOZO, Ch. J., POUND, KELLOGG, O'BRIEN and HUBBS, JJ., concur with LEHMAN, J.; CRANE, J., dissents in memorandum.

Judgments reversed, etc.