FRANK E. AGAR and Others, Copartners, etc., of AGAR & Co., Plaintiffs, *v.* MAX ORDA, Defendant.

Supreme Court, New York County, June 20, 1932.

*Regan & Barrett* [*Edward G. Bathon* of counsel], for the plaintiffs.

*Sutherland, Orda & Scherwin* [*Murray C. Becker* and *Aaron Scherwin* of counsel], for the defendant.

SHIENTAG, J. This is a seller's action to recover the agreed purchase price of 200 shares of stock. Two points were disposed of on the trial, *first*, that the purchaser agreed to buy the stock for his own account and not as agent for a disclosed principal, and *second*, that there was a memorandum of the contract sufficient to satisfy the Statute of Frauds.

At the time of the contract of sale, plaintiff's assignor did not have any of the stock contracted for. On the date set for delivery it acquired a considerable block of the stock and offered to deliver 200 shares to the defendant. The latter refused to accept the stock, alleging financial difficulties and asking for an indefinite extension of time to meet his admitted obligation. Clearly the defendant is guilty of a breach of contract and liable in damages for the difference between the contract price and the market value of the stock at the time when acceptance was refused. The question here presented is whether the seller may maintain an action for the price. This is an action by a vendor against a vendee. The relationship of broker and customer is not involved.

Plaintiff contends that title to 200 shares of stock passed to the defendant at the moment the seller received stock sufficient to meet its obligation to the defendant. No weight can be given to this contention in view of the provision of the Uniform Stock Transfer Act, that title to shares of stock can be transferred only by delivery. (Pers. Prop. Law, § 162, as added by Laws of 1913, chap. 600.) If it be assumed that this section refers only to the transfer of the record title, there is nothing to indicate that any property in the stock passed to the buyer. Even in ordinary commodity sales, the transfer of title to goods unascertained at the time of the original contract requires something more than acquisition of sufficient goods by the seller. (*Procter & Gamble Co.* v.

*Peters Co.*, 233 N. Y. 97.) The record is barren of any evidence from which it may be inferred that there was an unconditional appropriation of the stock to the contract by the seller with the assent of the buyer.

The plaintiff contends, however, that it may maintain an action for the price even if title has not passed. Before the enactment of the Sales of Goods Act (Pers. Prop. Law, art. 5, added by Laws of 1911, chap. 571), it was long the rule in this State that, even if title to the subject-matter of the sale did not pass to the buyer, the seller, upon making a proper tender, could sue for the purchase price.

" When the vendee of personal property, under an executory contract of sale, refuses to complete his purchase, the vendor may keep the article for him and sue for the entire purchase price; or he may keep the property as his own and sue for the difference between the market value and the contract price; or he may sell the property for the highest sum he can get, and after crediting the net amount received, sue for the balance of the purchase money." (*Ackerman* v. *Rubens*, 167 N. Y. 405, 408.)

This rule applied " not only to cases where the title passed at once, but also to cases where the contract was executory but there had been a valid tender and refusal." (*Van Brocklen* v. *Smeallie*, 140 N. Y. 70, 75.) (See, also, *Finlayson* v. *Wiman*, 84 Hun, 357; *Dustan* v. *McAndrew*, 44 N. Y. 72.)

Under the Sales of Goods Act, however, the seller's action for the price, where title has not passed, is restricted to cases (a) where the price is payable on a day certain, irrespective of delivery or of transfer of title, and (b) where the goods cannot readily be resold for a reasonable price. (Pers. Prop. Law, § 144, subds. 2 and 3, as added by Laws of 1911, chap. 571.) Neither of those conditions is met in the instant case. Accordingly, since the property in the stock never passed, in this case, to the buyer, an action for the price may be maintained only if it is held that shares of stock are not subject to the Sales of Goods Act.

The question whether shares of corporate stock are subject to the Sales of Goods Act was answered in the affirmative by the Appellate Division of this department in the recent case of *Friedman* v. *Bachmann* (234 App. Div. 267, Jan. 1932). There was no discussion of the subject, the court relying on the decision of the Court of Appeals in *Wills* v. *Investors Bankstocks Corp.* (257 N. Y. 451, Nov. 1931.) The plaintiff contends, however, that the Appellate Division has misconstrued the *Wills* case and that its

decision to apply the Sales of Goods Act to the sale of stocks was by way of dictum and opposed to leading authorities. These contentions, ably presented, merit scrutiny in view of the commercial importance of the question raised.

Section 85 of the Personal Property Law (as added by Laws of 1911, chap. 571), the Statute of Frauds section, covers the " sale of any goods or choses in action of the value of fifty dollars or upwards." The Sales of Goods Act proper covers only " goods " which are defined as " all chattels personal other than things in action and money." (Pers. Prop. Law, § 156, as added by Laws of 1911, chap. 571.) Shares of stock clearly come within the Statute of Frauds. (For a review of the English and American cases, see 7 Ann. Cas. 930; Williston Sales, § 67; Fowler Pers. Prop. Law, § 31.) The question whether shares of stock are " goods " within the meaning of the Sales Act has long been the subject of controversy. (44 Harv. Law Rev. 998; 32 Col. Law Rev. 547, 896.) The passage of the Uniform Stock Transfer Act (Pers. Prop. Law, art. 6, as added by Laws of 1913, chap. 600) has further complicated the problem.

Williston and Benjamin both hold that shares of corporate stock do not fall within the definition of " goods " laid down in the Sales Act. (Williston Sales, § 619; Benjamin Sales [5th ed.], p. 173.)

In some jurisdictions it has been expressly held that shares of stock are not subject to the Sales Act. (*Millard* v. *Green*, 94 Conn. 597; *Goodhue* v. *State Street Trust Co.*, 267 Mass. 28; *Guppy* v. *Moltrup*, 281 Penn. St. 343; *Smith* v. *Lingelbach*, 177 Wis. 170.) In other jurisdictions a contrary view prevails. (*Postel* v. *Hagist*, 251 Ill. App. 454; *Davis Laundry* v. *Whitmore*, 92 Ohio St. 44; *Corwin* v. *Grays Harbor Washingtonian*, 151 Wash. 585.) In numerous cases the question was not squarely decided, the courts resorting to various sections of the Sales Act as declaratory of the rules at common law. (*Walker* v. *Northern & Western Finance & T. Corp.*, 199 App. Div. 471; *State ex rel. Spillman* v. *Central Purchasing Co.*, 118 Neb. 382, 389.)

The status of shares of corporate stock, from the standpoint of taxation, attachment and the conflict of laws generally, has long engaged the attention of the courts. (Lowndes, " The Passing of Situs — Jurisdiction to Tax Shares of Corporate Stock," 45 Harv. Law Rev. 777.) Shares of stock have generally been classified by the courts as intangibles, as in the nature of things in action. (*First National Bank* v. *Maine*, 284 U. S. 312, 331.) There seems, however, to be a tendency to regard such a classification as not sufficiently realistic, in the light of modern business conditions.

Shares of stock have a visible, tangible form. They are commonly the subject of sale and barter. In a recent article, Professor Joseph H. Beale recognizes the inadequacy of the division of things movable into tangibles and intangibles and suggests a division of personal property into three classes, tangibles, *securities* and intangibles. (" Living Trusts of Movables in the Conflict of Laws." 45 Harv. Law Rev. 969.) Only a detailed analysis can determine what points of friction there would be, so far as shares of corporate stock are concerned, between the provisions of the Sales of Goods Act and the rules of law independently of that statute. Perhaps the two most important changes effected in this State by the Sales of Goods Act are the extension of the buyer's right of rescission for breach of warranty or condition, and the restriction of the seller's right to sue for the price where title has not passed. The courts holding that sales of stock are subject to the Sales Act undoubtedly take the view that the reasons which impelled the drafters of the Uniform Sales Act to make those changes are just as applicable to corporate securities as to commodities.

The plaintiff's contention that shares of stock are not subject to the Sales of Goods Act finds some support in the course of decisions in this State. Certainly, up to the decision in the *Wills Case (supra)*, no case that has been brought to my attention held that sales of stock are subject to the Sales of Goods Act. In fact, in *Rosenwasser* v. *Blyn Shoes, Inc.* (246 N. Y. 340), the Court of Appeals, in a transaction involving a sale of corporate stock, adopted the common-law rule and not the rule of the Sales of Goods Act with respect to rescission for breach of warranty. (And cf. *Phelps-Stokes Estates* v. *Nixon*, 222 N. Y. 93.) The *Wills* case itself does not specifically hold that shares of stock are " goods " within the meaning of the Sales of Goods Act. The status of shares of stock is not discussed. Indeed all of the briefs submitted in that case proceed upon the theory that shares of stock are not subject to the provisions of the Sales of Goods Act, but are things in action or in the nature of such. To the extent that the Sales of Goods Act was resorted to, it was declaratory of the common law. The same conclusion could have been reached without reference to the act. The plaintiff contends that the Appellate Division in the *Friedman Case (supra)* extended the scope of the *Wills* case far beyond its actual decision, and that the ruling of the Appellate Division, that shares of stock are subject to the Sales of Goods Act, is *obiter dictum*, because the court also found that there was a defective tender, one which would have been insufficient at common law. The ruling of the Appellate Division is more than a passing dictum. Its interpretation of the *Wills* case is supported at least by the dis-

senting opinion in that case. The decision in *Friedman* v. *Bachmann* purports to lay down a definite rule on a subject of widespread commercial interest. Although the historical correctness of this rule may be challenged, it reflects a practical rather than a legalistic conception of the status of shares of corporate stock, and tends to conform to the needs of modern business practice. It should be followed by a trial court. If shares of stock are subject to the Sales Act, an action for the price may not be maintained in this case. Judgment is accordingly directed in favor of the defendant. Exception to plaintiff. Twenty days' stay of execution and sixty days to make a case.