ARTHUR A. BALLANTINE, as Trustee of CONTINENTAL SECURITIES CORPORATION, Respondent, *v.* VINCENT E. FERRETTI and Others, Defendants, Impleaded with ROBERT STRANGE and GILBERT OTTLEY, Appellants.

(Appeal No. 1 and Appeal No. 2 Consolidated.)

First Department, December 23, 1938.

*William J. Cahill* of counsel, for the appellant Robert Strange.

*Roger Hinds* of counsel, for the appellant Gilbert Ottley.

*Louis M. Loeb* of counsel [*Harold Nathan* and *Edward J. Ross* with him on the brief; *Cook, Nathan, Lehman & Greenman*, attorneys], for the respondent.

O'MALLEY, J.  The question presented by these appeals is whether the court properly directed the sale of corporate stock either under its inherent power, the provisions of section 979-a, or section 980 of the Civil Practice Act.  The sections read:

" § 979-a. Disposition of property during pendency of action.' Whenever it shall appear to the court that the ownership of any goods, wares or merchandise will depend upon the outcome of a pending action, and that neither party is willing to accept the merchandise as its property during the pendency of action, the court may upon the application of any party make an order for the sale by any person or persons named in such order and in such manner and on such terms as the court or judge may think desirable, of such goods, wares and merchandise.  Upon any such sale any party to the action may purchase the goods, without prejudice to its claims.  The proceeds shall be deposited or held by such persons and upon such security as the court may direct."

" § 980. Sale of perishable property.  It shall be lawful for the court in which an action or special proceeding is pending, or a judge thereof, on the application of any party, to make any order for the sale, by any person or persons named in such order, and in such manner, and on such terms as the court or judge may think desirable, of any goods, wares, or merchandise, which are the subject of such action or special proceeding, and which may be of a perishable nature or likely to be injured from keeping."

The plaintiff, appointed trustee of Continental Securities Corporation (referred to herein as Continental) in reorganization proceedings (Bankruptcy Act, § 77B), brings this action for an accounting, restitution, money damages, and general appropriate relief against numerous defendants who allegedly have come unlawfully into possession of certain assets of Continental.

Generally speaking, the complaint alleges a 'conspiracy on the part of certain defendants, not including these appellants, to gain control of certain investment trusts by acquiring stock control of corporations having managerial control of such trusts. One of these trusts was Continental.

According to the pleading, the conspirators also gained control of a trust known as Administered Fund Second, Inc., of which a corporation known as Corporate Administration, Inc., was the manager.

The capital stock of Corporate Administration, Inc., was owned by these appellants, but ultimately came into the possession of Continental. While it is claimed that the Continental was unlawfully mulcted of $354,500 by the conspirators, the appellants are alleged to have received a total of but $250,000.

In the first appeal there is found the original complaint; in the second, an amended complaint. As the appeals have been consolidated, reference may be made to either record.

· Neither in the original nor the amended complaint does the plaintiff allege that he actually rescinded the transactions and tendered back the stock, but merely asks for rescission and offers to return the stock. In the original complaint these appellants were charged merely with receiving the sums in question without good faith or lawful value. The tender of the stock to these appellants in this pleading was conditioned upon payment of $354,500, and interest, though they had received but $250,000.

In the amended complaint, as in the original, two of the conspirators are said to be concerns known as Conroy & Co., Inc., an investment house, and Calmur & Company, Inc. In this amended complaint it is further alleged that these appellants had sold their stock to Conroy & Co., Inc., which, in turn, had sold it to Calmur & Company, Inc., which thereafter made the sale to Continental for the $354,500.

The gravamen of the charges against said defendants in this amended pleading seems to be the allegation that the price paid to them for the stock was excessive to such a degree that they " had notice that the purchase was for an ulterior and improper purpose." Here the tender was conditioned upon the payment only of the $250,000 received by these appellants.

Important to the decision herein are the allegations in both pleadings with respect to the alleged value of the appellants' stock at the time of its sale, not to Continental, but to Conroy & Co., Inc. In the original complaint it was alleged that the stock " was of no value;" in the amended, that it " was of very little monetary value."

After receiving permission of the United States District Court to apply herein, the plaintiff secured the approval at Special Term of a sale of the stock of Corporate Administration, Inc., to one Leffler for the sum of $5,000. The order provided that this sum was to be held in lieu of and in substitution for the shares of stock for all purposes of the action and that any tender or restitution of this sum should have the same force and effect as a tender or restitution of the shares.

The moving affidavit of plaintiff's attorney is to the effect that, while the investment trust (Administered Fund Second, Inc.) managed by Corporate Administration, Inc. (the shares of which had been sold by these appellants), had not been looted or depleted by the conspirators, still the attendant notoriety had caused a shrinkage in its assets, and it was the desire of the plaintiff to have the control of the managing company (Corporate Administration, Inc.) in a person with ability and experience and of known integrity. It was further to the effect that the managing company was in need of funds for the payment of investment counsel as required by its contract and otherwise, and that the plaintiff did not think it proper that he request permission further to use funds of Continental for such purposes.

Reversal of the order authorizing the sale is sought upon the ground that sections 979-a and 980 of the Civil Practice Act (*supra*) do not here apply, and that in no event do they authorize a sale in advance of the trial and even joinder of issue, and thus prejudice defendants' right to a return of the stock itself, rather than a fixed sum of $5,000 in the event the sale be set aside.

The court in an equity suit has inherent power under proper circumstances, pending the trial, to order the sale of chattels. (*Jones* v. *Springer*, 226 U. S. 148, 156; *Pollard* v. *Baker*, 101 Mass. 259; *Crane* v. *Ford*, 1 Hopk. Ch. 114.)

We assume for the purposes of this appeal that in a proper case shares of stock may be considered as goods, wares and merchandise, and even of a perishable nature or likely to be injured from keeping. (See *Wills* v. *Investors Bankstocks Corp.*, 257 N. Y. 451, 456, 457; *Friedman* v. *Bachmann*, 234 App. Div. 267, 269; *Agar* v. *Orda*, 264 N. Y. 248, 251; *Svenska T. F. Aktiebolaget* v. *Bankers Trust Co.*,

268 id. 73, 81; *Coddington* v. *Jacksonville, Pensacola & Mobile Railway Co.*, 39 L. T. R. 12.)   This view would bring the case within the provisions of section 980 of the Civil Practice Act, derived from order 50, rule 2, English Practice Act.   It is true that in an English decision (*Evans* v. *Davies*, L. R. [1893] 2 Ch. Div. 216) the court, while holding shares of stock came within the purview of " goods, wares, or merchandise," held that they could not be regarded as " perishable," and granted the sale there only upon a further provision in the English rule not found in section 980 of the Civil Practice Act.

However, in view of the modern tendency, as indicated by above authorities, and more particularly in view of the expression of the Court of Appeals in *Svenska T. F. Aktiebolaget* v. *Bankers Trust Co.* (*supra*), it seems to us that under certain circumstances shares of stock may be regarded as being perishable, or likely to be injured from keeping.   ·

So, too, we may assume that the sale in a proper case would be permissible under the provisions of section 979-a and that the present litigation will be determinative of the ownership of goods, wares and merchandise.

We are of opinion, however, that, under the particular circumstances of this case, and with respect to these two appellants, the court should not have exercised its discretion by the confirmation of this sale.

So far as considering the shares of stock as being perishable is concerned, it has been already noted that in the original complaint they were alleged, when sold by these appellants, to have been of no value, and in the amended complaint as being of little monetary value.   In view of these formal allegations it is hard to see how they could be regarded as perishable when, after a lapse of time, they were sold to a restricted individual for $5,000, and when the opposing affidavit is to the effect that other offers were received ranging up to the sum of $25,000.

While it is a laudable purpose for plaintiff as trustee to limit so far as possible the expenses of the reorganization proceeding, still, from the record before us, we do not see why these appellants should be compelled to assist by this forced sale and to have in the contingency of a judgment against them a right only to $5,000 instead of the stock.

Moreover, it does not appear to us that this stock may be considered of a perishable nature or likely to be injured from keeping. It is the investment trust, Administered Fund Second, Inc., rather than Corporate Administration, Inc., which has been affected. In addition, so far as the advisability of having a person of known

qualifications and integrity in control of the managing company is concerned, it seems to us that this plaintiff, as the representative of the District Court, should inspire all necessary confidence; and as under the managerial contract investment counsel must be employed, we perceive no difficulty which may arise in securing one of ability. The fact that the mere ownership of the stock is attended with some disability should not justify a sale so far as these appellants, at least, are concerned.

Under the circumstances, therefore, we are of the opinion that in the exercise of discretion the Special Term should have denied the motion.

It follows, therefore, that the order in the first appeal should be reversed, with twenty dollars costs and disbursements, and the motion denied, and that the second appeal should be dismissed as being academic.

MARTIN, P. J., TOWNLEY, GLENNON and UNTERMYER, JJ., concur.

Order entered August 11, 1938, unanimously reversed and the motion denied, and the appeal from the order entered November 2, 1938, dismissed, with twenty dollars costs and disbursements to the appellants.