ROBERT A. PULFER, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 97262.   Promulgated February 19, 1941.

*William A. Borrusch, Esq.,* for the petitioner.
*Homer J. Fisher, Esq.,* for the respondent.

OPINION.

VAN FOSSAN: The Board has no jurisdiction of the year 1936, as to which respondent determined an overassessment. *Cornelius Cotton Mills*, 4 B. T. A. 255. Consequently, the only issue for our consideration is whether or not petitioner realized recognizable gain in the year 1935 upon an exchange of stock.

Petitioner contends that he exchanged his stock in the Dibble Color Co. for stock in Pratt & Lambert, Inc., pursuant to a plan of reorganization, and that no gain is recognizable on the exchange. In the alternative, he contends that even if gain is recognized, the exchange occurred in 1936.

Respondent argues that no tax-free reorganization was effected by the exchange because Pratt did not acquire "in exchange solely for all or a part of its voting stock * * * at least 80 per centum of the voting stock and at least 80 per centum of the total number of shares" of Dibble stock. He urges that gain is recognized on the transaction in 1935 since the exchange for which petitioner transferred his holdings in Dibble for stock in Pratt occurred in that year.

The applicable provisions of the statute are section 112 (b) (3) and (g) (1) (B) of the revenue Act of 1934.[1]

---

[1] SEC. 112. RECOGNITION OF GAIN OR LOSS.

   \*      \*      \*      \*      \*      \*      \*

(b) EXCHANGES SOLELY IN KIND.—

   \*      \*      \*      \*      \*      \*      \*

(3) STOCK FOR STOCK ON REORGANIZATION.—No gain or loss shall be recognized if stock or securities in a corporation a party to a reorganization are, in pursuance of the plan of reorganization, exchanged solely for stock or securities in such corporation or in another corporation a party to the reorganization.

   \*      \*      \*      \*      \*      \*      \*

(g) DEFINITION OF REORGANIZATION.—As used in this section and section 113—

(1) The term "reorganization" means \* \* \* (B) the acquisition by one corporation in exchange solely for all or a part of its voting stock: of at least 80 per centum of the voting stock and at least 80 per centum of the total number of shares of all other classes of stock of another corporation; or of substantially all the properties of another corporation \* \* \*.

Petitioner relies heavily on *Commissioner* v. *Dana*, 103 Fed. (2d) 359, in his argument that the "80 per centum" requirements of section 112 (g) (1) (B) are fulfilled by the "tacking" of Pratt & Lambert's prior ownership of 1,220 shares of Dibble stock to the stock acquired by exchange with petitioner. See also *Rawco, Inc., Ltd.*, 37 B. T. A. 128. Assuming, but not deciding, that Pratt acquired at least 80 percent of the voting stock and at least 80 percent of all other classes of shares of Dibble, we are yet of the opinion that there was no reorganization within the meaning of the statute. Section 112 (g) (1) (B) plainly states that the acquisition must be *solely* in exchange for all or a part of its voting stock. The acquisition by Pratt was not of the category stipulated by the statute. Petitioner, upon cross-examination at the hearing, stated that he believed Pratt's original holding of Dibble stock had been purchased for cash. No proof was presented which would indicate otherwise. Petitioner failed to sustain the burden of proving that the acquisition of the Dibble stock by Pratt was in exchange solely for all or a part of its voting stock. Petitioner, therefore, did not receive the shares of Pratt stock in the course of a tax-free reorganization.

Thus it becomes necessary that we determine the year in which the exchange occurred. Petitioner contends that title to the shares could not pass until delivery of the Pratt stock and that since those shares were not received by the Detroit bank until January 2, 1936, the exchange was not effective until that date. He cites the Uniform Sales Act, section 19, rule 5, enacted as section 9458 of the Michigan Compiled Laws of 1929,[2] and the Uniform Stock Transfer Act, section 1 (a), (b), enacted as section 9520,[3] of the Michigan Compiled Laws of 1929, as his authority for this contention. The Uniform Acts have also been adopted in New York.[4]

---

[2] 9458. SEC. 19. *Rules for ascertaining intention.* Unless a different intention appears, the following are rules for ascertaining the intention of the parties as to the time at which the property in the goods is to pass to the buyer:

*     *     *     *     *     *     *

Rule 5. If the contract to sell requires the seller to deliver the goods to the buyer, or at a particular place, or to pay the freight or cost of transportation to the buyer, or to a particular place, the property does not pass until the goods have been delivered to the buyer or reached the place agreed upon.

[3] 9520. SECTION 1. (*How title to certificates and shares may be transferred.*) Title to a certificate and to the shares represented thereby can be transferred only,

(a) By delivery of the certificate indorsed either in blank or to a specified person by the person appearing by the certificate to be the owner of the shares represented thereby, or

(b) By delivery of the certificate and a separate document containing a written assignment of the certificate or a power of attorney to sell, assign, or transfer the same or the shares represented thereby, signed by the person appearing by the certificate to be the owner of the shares represented thereby. * * *

[4] Sections of the New York law comparable to the Michigan statutes cited by petitioner are New York Personal Property Law, section 100 (the same as section 9458, Michigan C. L., 1929) and New York Personal Property Law, section 162 (same as section 9520, Michigan C. L. 1929).

Respondent maintains that the exchange in question was a sale within the meaning of the Uniform Sales Act and asserts that title passed at the time the parties intended, i. e., in 1935. Uniform Sales Act, section 18 (section 9457,[5] Mich. C. L., 1929; N. Y. Personal Property Law, section 99). He urges that the provisions of the Uniform Stock Transfer Act requiring delivery as a prerequisite to passage of title do not preclude the application of the Uniform Sales Act to determine the effective date of the exchange. He relies upon *Dee Furey Mott*, 35 B. T. A. 195; affd., 103 Fed. (2d) 1009.

In the *Mott* case the owner of shares which were held in a safety deposit box, on December 30, 1930, directed her broker to sell those shares. The broker sold the stock on December 30 but petitioner did not deliver the shares until January 2, 1931. We held that the sale was completed for purposes of realization of loss in the year 1930. In the course of our opinion there we considered the Uniform Sales Act and the Uniform Stock Transfer Act as enacted in the Michigan statutes and said:

> From a consideration of the above cases it seems to us sound to conclude that the Uniform Stock Transfer Act is not intended to prescribe an exclusive method for transferring property in shares of stock and that the question of when the property passes may be determined under the provisions of the Uniform Sales Act (Sale of Goods Act). The courts of Michigan do not appear to have passed on this question, although it has been held in that State that corporate stock is "goods" within the statute of frauds. *Sprague* v. *Hosie*, 155 Mich. 30; 118 N. W. 497. Under the provisions of the Uniform Sales Act quoted above it is not necessary that the goods be actually delivered in order to have a completed sale. The time of passing of title, and completion of sale, of specific or ascertained goods depends on the intent of the parties to the contract. * * *

Further, it was held that the Federal statute was controlling, the Board stating:

> Our conclusion here need not rest on our interpretation of the Uniform Acts. These acts can not control the matter of deductions under a Federal revenue act. Deductions for losses, like those for depletion, *Palmer* v. *Bender*, 287 U. S. 551, and depreciation, *Weiss* v. *Wiener*, 279 U. S. 333, are determinable by the Federal statute. "State law may control only when the operation of the Federal taxing act by express language or necessary implication makes its own operation dependent on state law." *Burnet* v. *Harmel*, 287 U. S. 103.

In the *Mott* proceeding we made an extensive examination of the Michigan law on this point and the pertinent cases. We regard that case as controlling here. The New York law in regard to the appli-

---

[5] 9457. Sec. 18. *Property in specific goods passes when parties so intend.*

(1) Where there is a contract to sell specific or ascertained goods, the property in them is transferred to the buyer at such time as the parties to the contract intend it to be transferred.

(2) For the purpose of ascertaining the intention of the parties, regard shall be had to the terms of the contract, the conduct of the parties, usages of trade and the circumstances of the case.

cability of the Uniform Sales Act to the determination of passage of title in stock transactions is similar to that of Michigan. *Agar* v. *Orda*, 144 Misc. 149; 258 N. Y. S. 274; affd., 264 N. Y. 248; 190 N. E. 479. See *Francis S. Appleby*, 31 B. T. A. 533.

In *Ruml* v. *Commissioner*, 83 Fed. (2d) 257, the Circuit Court of Appeals for the Second Circuit considered the case of a taxpayer who, like petitioner here, had shares of stock pledged as collateral for a loan. He directed his broker to sell the pledged shares but informed the broker that he could not deliver the shares immediately. The broker accordingly sold the shares in the year in which he was directed to sell them. The shares were not delivered to the broker until after the year in which the direction to sell had occurred. The court held that the taxpayer sustained a deductible loss in the year of sale, regardless of the fact that the taxpayer was unable to make delivery in that year. A like holding in regard to realization of gain was made by the Circuit Court of Appeals for the Sixth Circuit in *Huntington National Bank* v. *Commissioner*, 90 Fed. (2d) 876.

We are of the opinion that the intent of petitioner and Pratt & Lambert, Inc., was that the exchange should take place in the year 1935. The letter of transmittal sent to Buffalo by the receiver of the First National Bank–Detroit plainly indicated that the parties desired the exchange to take place in the year 1935. In any event, for all purposes of the provisions of the revenue act regarding recognition of gain or loss, the exchange was effective in 1935. *Dee Furey Mott, supra.* We hold that petitioner received the shares of Pratt & Lambert, Inc., in a taxable exchange in the year 1935. Respondent's determination is sustained.

*Decision will be entered for the respondent.*